44 A.3d 794 (2012)
305 Conn. 1
STATE of Connecticut
v.
Victor L. JORDAN.
No. 18542.
Supreme Court of Connecticut.
Argued February 9, 2012.
Decided May 29, 2012.
*800 Pamela S. Nagy, special public defender, for the appellant (defendant).
C. Robert Satti, Jr., supervisory assistant state's attorney, with whom, on the brief, was John C. Smriga, state's attorney, for the appellee (state).
ROGERS, C.J., and NORCOTT, PALMER, ZARELLA, McLACHLAN, EVELEIGH and VERTEFEUILLE, Js.
ROGERS, C.J.
This case presents the question of whether the defendant, Victor L. Jordan, clearly and unequivocally asserted his constitutional right to self-representation, thus triggering the trial court's responsibility to canvass him pursuant to Practice Book § 44-3.[1] The defendant appeals *801 from the Appellate Court's judgment affirming the judgment of conviction, rendered after a jury trial, of reckless endangerment in the first degree in violation of General Statutes § 53a-63.[2] He claims that the Appellate Court improperly concluded that: (1) his request to represent himself was not clear and unequivocal; and (2) his right to cross-examine a witness was not improperly restricted. We agree with the defendant's first claim and, accordingly, reverse the judgment.
The Appellate Court's decision recounts the following facts, which the jury reasonably could have found. "On May 2, 2004, at approximately 2:20 a.m., the defendant was operating a motorcycle northbound on Interstate 95, just past exit thirty [in the town of Stratford]. Jennifer Diaz was a passenger on the defendant's motorcycle. The defendant was driving alongside Rodney Howard, who was driving a motorcycle with passenger Country Washington, and George Hutchings, who was driving a car with passengers Corey Cook and Tonya Ellis. While operating the motorcycle at an excessive rate of speed, the defendant struck a motor vehicle operated by Ricardo Ringor, causing Diaz to be ejected from the motorcycle. Diaz sustained fatal injuries from the accident." State v. Jordan, 118 Conn.App. 628, 630, 984 A.2d 1160 (2009).
In March, 2005, the defendant was charged with, inter alia, reckless endangerment in the first degree in connection with the incident. Pending trial, he was incarcerated, initially due to his conviction on unrelated charges and, thereafter, because of his inability to post bond on the charges relating to Diaz' death.[3] The defendant initially was represented by Attorney David Abbamonte. On June 30, 2005, the defendant filed a motion to dismiss Abbamonte and, on November 2, 2005, following a canvass by the trial court, Fasano, J., he was permitted to assume representing himself while Abbamonte acted as standby counsel. The defendant represented himself for approximately seven months.[4] On May 31, 2006, another attorney, *802 William R. Schipul, was appointed to represent the defendant, initially as standby counsel and then as full counsel.[5]
On December 7, 2006, after being held for approximately one year on the charges alleged in the present matter, the defendant filed a pro se motion for a speedy trial.[6] At a December 13, 2006 hearing on the motion, the trial court, Comerford, J., and Schipul discussed Schipul's schedule, which required him to finish two other trials, including a murder trial, before he could try the defendant's case. After the trial court informed the defendant that his trial would commence when Schipul was finished with the other two matters, the defendant replied: "I filed the motion pro se, Your Honor.... I'll deal with my speedy trial pro se. I don't need the attorney." The trial court directed the defendant to deal with his motion through Schipul, to which the defendant responded: "I want it on the record I made it clear to Your Honor." The court then told the defendant to "[k]eep quiet" and adjourned the hearing.
On January 23, 2007, the defendant filed a pro se motion to dismiss counsel in which he claimed that Schipul had a conflict of interest, was not fulfilling his professional responsibilities and had failed to retain a forensic expert. The defendant also referred to his previous speedy trial motion and his expectation that he be tried timely, and stated in his motion that "counsel has informed [the] defendant that his services are required elsewhere, therefore making him unavailable to the defendant for his pending trial." As relief, the defendant requested that the trial court "either dismiss ... Schipul as [the] defendant's counsel and allow [the] defendant to file pro se [pursuant to Practice Book §] 44-3 or appoint a special public defender as counsel or standby counsel [pursuant to Practice Book §] 44-4."[7]
The defendant's motion to dismiss counsel was heard before Judge Comerford on January 24, 2007. At the hearing, Schipul began by stating that he and the defendant had experienced a disagreement and a breakdown in communication, and that he thought the motion to dismiss counsel should be granted for those reasons, if not those stated in the motion. The trial court asked the defendant to explain the alleged conflict of interest that he noted in his motion to dismiss counsel, and the following colloquy ensued regarding the defendant's desire for a speedy trial:
"The Defendant: ... I made clear to you and ... Schipul last time I was here. This [is] why I was upset. I wanted my speedy trial to proceed according to Connecticut General Statutes. So I would go to trial today, right now, if [the prosecutor] was ready to go to trial. It seems like the
*803 "The Court: [The prosecutor] is ready to go to trial. Your lawyer is on trial presently.
"The Defendant: I understand that. The fact I'm making clear is ... Schipul is not Victor Jordan, Victor Jordan, docket CR0526401. No other case is. No other one. No other documents. So when I filed for that speedy trial, I expected it to be heard.
"The Court: How do you expect your lawyer to try two cases at a time?
"The Defendant: I informed him beforehand. I informed him when I came out here, told him I expected my trial [to be] heard in thirty days.
"The Court: How is he going to do that if he's on trial in another case?
"The Defendant: Then he could step down. And I also made clear to you, Your Honor, that day I would handle my case pro se, which I'm willing to do under the circumstances at this moment and time. I have the file. I'd file probably a couple more motions, a costs and waive fees which I filed with [Judge Fasano], which he denied without prejudice until I find an expert witness I was trying to obtain for the past year and a half. And I informed my counsel, the late David Abbamonte, and ... Schipul, to turn over to the state's attorney a witness list, et cetera. It's been over a year and a half, eighteen months, if not before, I was discharged on my last sentence. I've been cooperating the whole time with the state, and my counsel, and the whole time I've been gettingyou knowliterally shafted. So I'm willing to handle my case, and have this case brought to trial.
"The Court: Why don't we handle your motion first, so I understand what you're saying?
"The Defendant: Your
"The Court: Let me finish talking. All right? Then you talk. Okay? Do we understand each other ... ? Do we understand one another? That's a simple yes or no from you.
"Take him out. Talk to him, Mr. Schipul." (Emphasis added.)
Following a recess, the defendant and Schipul returned to the courtroom, and there was further discussion regarding the other allegations in the defendant's motion to dismiss counsel. Specifically, the defendant expressed a belief that Schipul was biased due to his representation of the defendant's codefendant in a previous unrelated matter, and he complained that Schipul had failed to take steps the defendant believed were necessary for his defense, in particular the retention of a forensic expert. In response to each of the defendant's assertions, Schipul explained briefly why he disagreed. The trial court then asked whether the defendant previously had sought to dismiss counsel, and the clerk and the state's attorney informed the court of the defendant's previous period of self-representation.
The trial court then inquired as to Schipul's schedule, and Schipul advised the court that he likely could commence jury selection on the defendant's case within a few weeks. The state confirmed that it was ready to begin at any time, and had been for several weeks. At that point, without any further inquiry of the defendant, the trial court stated that it was going to deny the defendant's motion "on the grounds that [it] has heard no substantive reason therefor based upon the dialogue I had with the defendant, with defendant's counsel, and with the state's attorney in this matter here today."
Immediately thereafter, the court began to address a motion to compel disclosure of witnesses that the state had filed. Schipul, during the course of argument on the *804 state's motion, alerted the court to its denial or failure to address the defendant's request to represent himself. Specifically, while arguing that the state also should provide a complete list of the witnesses it intended to call, Schipul stated: "I don't know what the next step is going to be in this case. Is the [defendant] going to represent himself? I've indicated that there is a reason why I feel that the [defendant's] motion should have beenshould be granted, not contained in the motion. So it would be a benefit, I think, to all parties if something were simply laid out for the defense, as well as the state, to advance the proceedings." The trial court did not respond to Schipul's concern other than to direct that the state provide a witness list. When argument on the state's motion to compel concluded, the court adjourned the hearing.
Following the selection of a jury, the defendant's trial was held before a different judge, Blue, J., between February 22 and March 5, 2007.[8] On March 8, 2007, the jury returned a verdict of guilty on the charge of reckless endangerment in the first degree and the court thereafter, rendered judgment in accordance with the verdict and sentenced the defendant to the time he already had served.[9] His appeal to the Appellate Court followed.
In the Appellate Court, the defendant claimed that he improperly had been denied his constitutional right to represent himself. He argued that his motion to dismiss Schipul and his statements to the trial court at the hearing on that motion were a clear and unequivocal invocation of the right to self-representation and, therefore, the trial court should have responded by canvassing him pursuant to Practice Book § 44-3. State v. Jordan, supra, 118 Conn.App. at 633-34, 984 A.2d 1160. The Appellate Court disagreed, reasoning that, because the defendant's written motion requested two forms of reliefeither the right to represent himself or to be appointed new counsel or standby counselhe was open to alternative forms of representation, and "did not clearly and unequivocally choose self-representation." Id., at 635, 984 A.2d 1160. According to the Appellate Court, the defendant essentially "was attempting to exercise the right to counsel and the right of self-representation simultaneously." Id.
The defendant also claimed that the trial court improperly had restricted his cross-examination of Ringor. Specifically, he argued that he should have been permitted to question Ringor about his prior speeding tickets and a license suspension, whether he was a United States citizen at the time of the accident, and whether he had contemplated filing an action in connection with this case. Id., at 636, 984 *805 A.2d 1160. The Appellate Court concluded that preclusion of questioning as to tickets and suspensions was proper pursuant to § 4-5 of the Connecticut Code of Evidence, which governs prior misconduct, that evidence relating to Ringor's citizenship was not relevant, and that the defendant's claim as to a potential action had not been raised at trial and, therefore, would not be reviewed on appeal. Id., at 636-38, 984 A.2d 1160.
The defendant finally claimed that the trial court improperly had permitted the state to make a missing witness argument. Id., at 638, 984 A.2d 1160. The Appellate Court agreed that the state's argument was improper because the availability of the witnesses at issue had not been established; id., at 640, 984 A.2d 1160; but that the impropriety was harmless error. Id., at 642, 984 A.2d 1160. Accordingly, it affirmed the judgment of conviction. Id.
Following the Appellate Court's judgment, this court granted certification to appeal, limited to the following questions: "Did the Appellate Court properly determine that (1) the trial court properly denied the defendant's motion to dismiss counsel, and (2) the trial court did not improperly restrict cross-examination of a state's witness by the defendant?" State v. Jordan, 295 Conn. 901, 988 A.2d 877 (2010).

I
The defendant claims first that the Appellate Court improperly concluded that his assertion of the right to self-representation was not clear and unequivocal. He contends specifically that his request, in his written motion, for alternative forms of relief did not render the request for self-representation equivocal, and further, that he was not obligated to reassert the right once the trial court denied it. The state claims in response that the defendant equivocated between representing himself and being represented by counsel and, additionally, that his failure to renew his request for self-representation or to object anew to his representation by counsel following the trial court's denial of his motion is further evidence of his equivocation. We agree with the defendant that he clearly and unequivocally asserted his right to represent himself, thereby triggering the trial court's responsibility to inquire further and to canvass him pursuant to Practice Book § 44-3, and that he was not required to continually assert the right after the trial court had ruled on his request.
We begin with general principles. "The sixth amendment to the United States constitution provides in relevant part: In all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense. The sixth amendment right to counsel is made applicable to state prosecutions through the due process clause of the fourteenth amendment.... In Faretta v. California, 422 U.S. 806, 807, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the United States Supreme Court concluded that the sixth amendment [also] embodies a right to self-representation and that a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so." (Citation omitted; emphasis in original; internal quotation marks omitted.) State v. Flanagan, 293 Conn. 406, 417, 978 A.2d 64 (2009). In short, "forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." (Internal quotation marks omitted.) Id.
It is well established that "[t]he right to counsel and the right to self-representation present mutually exclusive *806 alternatives. A criminal defendant has a constitutionally protected interest in each, but since the two rights cannot be exercised simultaneously, a defendant must choose between them. When the right to have competent counsel ceases as the result of a sufficient waiver, the right of self-representation begins.... Put another way, a defendant properly exercises his right to self-representation by knowingly and intelligently waiving his right to representation by counsel." (Internal quotation marks omitted.) Id., at 418, 978 A.2d 64.
The inquiry mandated by Practice Book § 44-3 is designed to ensure the knowing and intelligent waiver of counsel that constitutionally is required. Id., at 419, 978 A.2d 64. "We ordinarily review for abuse of discretion a trial court's determination, made after a canvass pursuant to... § 44-3, that a defendant has knowingly and voluntarily waived his right to counsel." Id., at 420, 978 A.2d 64. In cases like the present one, however, where "the defendant claims that the trial court improperly failed to exercise that discretion by canvassing him after he clearly and unequivocally invoked his right to represent himself ... whether the defendant's request was clear and unequivocal presents a mixed question of law and fact, over which ... our review is plenary." (Internal quotation marks omitted.) Id.; see also id., at 420 n. 10, 978 A.2d 64.
"State and federal courts consistently have discussed the right to self-representation in terms of invoking or asserting it ... and have concluded that there can be no infringement of the right to self-representation in the absence of a defendant's proper assertion of that right.... The threshold requirement that the defendant clearly and unequivocally invoke his right to proceed pro se is one of many safeguards of the fundamental right to counsel." (Citations omitted; internal quotation marks omitted.) Id., at 422-23, 978 A.2d 64. Accordingly, "[t]he constitutional right of self-representation depends... upon its invocation by the defendant in a clear and unequivocal manner.... In the absence of a clear and unequivocal assertion of the right to self-representation, a trial court has no independent obligation to inquire into the defendant's interest in representing himself.... [Instead] recognition of the right becomes a matter entrusted to the exercise of discretion by the trial court.... Conversely, once there has been an unequivocal request for self-representation, a court must undertake an inquiry [pursuant to Practice Book § 44-3], on the record, to inform the defendant of the risks of self-representation and to permit him to make a knowing and intelligent waiver of his right to counsel." (Internal quotation marks omitted.) Id., at 423, 978 A.2d 64.
Although a clear and unequivocal request is required, there is no standard form it must take. "[A] defendant does not need to recite some talismanic formula hoping to open the eyes and ears of the court to [that] request. Insofar as the desire to proceed pro se is concerned, [a defendant] must do no more than state his request, either orally or in writing, unambiguously to the court so that no reasonable person can say that the request was not made.... Moreover, it is generally incumbent upon the courts to elicit that elevated degree of clarity through a detailed inquiry. That is, the triggering statement in a defendant's attempt to waive his right to counsel need not be punctilious; rather, the dialogue between the court and the defendant must result in a clear and unequivocal statement." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id., at 423-24, 978 A.2d 64.
*807 Finally, in conducting our review, we are cognizant that "the context of [a] reference to self-representation is important in determining whether the reference itself was a clear invocation of the right to self-representation." Morris v. Kikendall, United States District Court, Docket No. 07-CV-2422 (JFB), 2009 WL 1097922 (E.D.N.Y. April 23, 2009). The inquiry is "fact intensive and should be based on the totality of the circumstances surrounding the request"; Commonwealth v. Davido, 582 Pa. 52, 66, 868 A.2d 431, cert. denied, 546 U.S. 1020, 126 S.Ct. 660, 163 L.Ed.2d 534 (2005); which may include, inter alia, "whether the request was for hybrid representation ... or merely for the appointment of standby or advisory counsel ... the trial court's response to a request ... whether a defendant has consistently vacillated in his request ... and whether a request is the result of an emotional outburst...." (Citations omitted.) Id., at 65, 868 A.2d 431.
We conclude that in the present case, the defendant clearly, unequivocally and repeatedly asserted his right to self-representation, thereby triggering a duty for the trial court to inquire further and to conduct the canvass required by Practice Book § 44-3. First, the defendant asserted the right both in writing and orally. In his January 23, 2007 motion to dismiss counsel, the defendant listed a number of reasons why he was dissatisfied with his counsel and requested explicitly that the trial court dismiss Schipul and grant him one of two alternative requestsself-representation, possibly with standby counsel, or the appointment of new counsel. At the hearing on the motion, after Schipul expressed support for the defendant's request, the defendant explained the first reason for his dissatisfactioncontinual delay in the proceedings, while he remained incarceratedthen stated decisively that, because his attorney had other obligations, he was willing to assume representing himself immediately so that the case could move forward to trial. Placed in context, the defendant's motion to dismiss counsel and his oral assertion of the right to self-representation, preceded by a previous seven month period of self-representation and his recent filing, pro se, of a speedy trial motion, were other strong indications that he wanted to act as his own counsel. Instead of inquiring further of the defendant, the trial court cut short his explanation and directed him to stop talking, leave the courtroom and discuss the matter with counsel.[10] Upon reconvening the hearing, the trial court explored with Schipul and the defendant the concerns raised by the defendant in his motion. At the conclusion of that discussion, however, the court summarily denied the motion to dismiss counsel on the basis that it was substantively unfounded without acknowledging the defendant's written and oral assertions of the right to represent himself.[11]
*808 Although the trial court's exploration of the reasons given by the defendant for his desire to dismiss counsel was appropriate and pertinent to the question of whether new counsel should be appointed in place of Schipul,[12] the court's inquiry was not an adequate response to the defendant's assertion of his right to self-representation, which had occurred before the commencement of trial. As we explained in State v. Flanagan, supra, 293 Conn. at 431, 978 A.2d 64, assuming that a criminal defendant's request to represent himself is "informed, voluntary and unequivocal," his right "to act as his own lawyer is unqualified if invoked prior to the start of the trial." (Emphasis in original; internal quotation marks omitted.) See also Sapienza v. Vincent, 534 F.2d 1007, 1010 (2d Cir.1976).[13] In the present case, once the trial court concluded that substitution of counsel was not warranted, it should have turned to the defendant's alternative request that he be allowed to represent himself, and conducted the canvass contemplated by Practice Book § 44-3 to establish that the exercise of that right was knowing and voluntary. See Buhl v. Cooksey, 233 F.3d 783, 792-94 (3d Cir.2000) (when defendant made clear request to proceed pro se, trial court improperly focused on his motivations for waiving counsel rather than determining whether waiver was knowing, voluntary and intelligent). Indeed, Schipul recognized that the defendant had asserted the right to represent himself, and he reminded *809 the trial court of that circumstance during argument on the state's motion to compel the disclosure of witnesses. The trial court, however, remained unresponsive to the defendant's request.
We agree with the defendant that the Appellate Court improperly concluded, in the circumstances of this case, that the defendant's expression of his request as an alternative to the appointment of new counsel constituted vacillation, thereby rendering equivocal his assertion of the right to self-representation.[14] We recognized in State v. Flanagan, supra, 293 Conn. at 427, 978 A.2d 64, that "[t]he possibility of alternate rulings does not ... preclude a finding of a clear and unequivocal request for self-representation. As the Second Circuit has noted, `[t]o the extent one may view [a request] as conditional... a defendant is not deemed to have equivocated in his desire for self-representation merely because he expresses that view in the alternative, simultaneously requests the appointment of new counsel, or uses it as a threat to obtain private counsel.' Williams v. Bartlett, [44 F.3d 95, 100 (2d Cir.1994) ]; see also United States v. Hernandez, [203 F.3d 614, 621-22 (9th Cir. 2000)] (`[t]he fact that [the defendant's] request may have been conditionalthat is, the fact that he requested to represent himself only because the court was unwilling to grant his request for new counsel is not evidence that the request was equivocal') [overruled on other grounds by United States v. Ferguson, 560 F.3d 1060, 1068 n. 4 (9th Cir.2009) ]." See also United States v. Mendez-Sanchez, 563 F.3d 935, 946 (9th Cir.2009) ("A conditional waiver can be stated unequivocally, as for example when a defendant says in substance: `If I do not get new counsel, I want to represent myself.' There is a condition, but the demand is unequivocal."), cert. denied, ___ U.S. ___, 130 S.Ct. 252, 175 L.Ed.2d 172 (2009); Adams v. Carroll, 875 F.2d 1441, 1444-45 (9th Cir.1989) (defendant's self-representation request not equivocal where he consistently stated that he wanted to proceed pro se if only alternative was retention of current counsel); Johnstone v. Kelly, 808 F.2d 214, 216 n. 2 (2d Cir.1986) ("[a] request to proceed pro se is not equivocal merely because it is an alternative position, advanced as a fall-back to a primary request for different counsel"), cert. denied, 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987). In the present case, the defendant's written request for relief clearly sought either new counsel or, in the alternative, self-representation. Additionally, his motion and his statements to the trial court made clear that, if new counsel could not be appointed, he wanted to represent himself and, furthermore, that he already possessed the court file and had a detailed plan as to how he intended to proceed with his case once granted that right.[15]
*810 Moreover, we disagree with the state that the defendant's failure to reassert the right to self-representation, once the court denied his motion, demonstrates that his initial assertion of the right was either equivocal or thereafter abandoned.[16] After a court denies a clear request for self-representation, a defendant's failure to renew the request is not evidence of equivocation; rather, in such circumstances, the denial likely "convinced [the] defendant [that] the self-representation option was simply unavailable, and [that] making the request again would be futile." (Internal quotation marks omitted.) State v. Flanagan, supra, 293 Conn. at 425, 978 A.2d 64. When a defendant reasonably believes that further argument would be pointless, he need not repeatedly renew his request to represent himself in order for a reviewing court to find that the right to self-representation was asserted. Id., at 426-27, 978 A.2d 64; see also United States v. Hernandez, supra, 203 F.3d at 622 (failure to renew request in later proceedings, following denial by court, "does not diminish the clarity of [a defendant's] request ... or render it equivocal"); United States v. Arlt, 41 F.3d 516, 523 (9th Cir.1994) (further requests for self-representation would have been fruitless when defendant "stated his request clearly and unequivocally and the judge has denied it in a[n] equally clear and unequivocal fashion"); cf. Wilson v. Walker, 204 F.3d 33, 37 (2d Cir.2000) ("[T]o avoid waiver of a previously invoked right to self-representation, a defendant need not continually renew his request to represent himself even after it is conclusively denied by the trial court. After a clear denial of the request, a defendant need not make fruitless motions or [forgo] cooperation with defense counsel in order to preserve the issue on appeal." [Internal quotation marks omitted.]); Buhl v. Cooksey, supra, 233 F.3d at 803 (same).[17]
In the present case, following an extended discussion, the trial court denied the motion that included both the defendant's request for new counsel and his request to represent himself, and immediately commenced considering a different motion filed by the state. Schipul's subsequent attempt to remind the court of the defendant's request for self-representation garnered no response. In reply to the defendant's earlier, oral assertion of the right, the trial court had cut the defendant off and ordered him to leave the courtroom, a dismissive approach that was consistent with the court's reaction, at a previous hearing, to the defendant's attempt to argue his speedy trial motion pro se. Under the circumstances of this case, we conclude that the defendant's failure to persist was not due to indecision, equivocation or voluntary abandonment of the right to self-representation but, rather, to his reasonable belief that any further argument would be pointless.
Finally, we recognize that a trial court properly may deny a request for *811 self-representation "when it is merely a tactic for delay ... or an impulsive response... or is made in passing anger or frustration ... or to frustrate the orderly administration of justice ... or is an insincere ploy to disrupt the proceedings...." (Citations omitted; internal quotation marks omitted.) State v. Towle, 162 N.H. 799, 804, 35 A.3d 490 (2011); see also Williams v. Bartlett, supra, 44 F.3d at 101 (denial of request for self-representation justified when vacillation suggests manipulation or abuse); Reese v. Nix, 942 F.2d 1276, 1281 (8th Cir.1991) (assertion of right must be "clear and unequivocal," and not merely request provoked by temporary whim, brief frustration or annoyance), cert. denied, 502 U.S. 1113, 112 S.Ct. 1220, 117 L.Ed.2d 457 (1992). There is no indication in the record before us, however, that any of the foregoing concerns were at issue, and the trial court made no findings in this regard. Clearly, the defendant did not seek to delay the proceedings but, rather, to expedite them. Moreover, his detailed presentation of his request to proceed pro se, both in a written motion with citation to the applicable rules of practice and orally to the trial court at the hearing on that motion, is evidence that his assertion of the right to self-representation was not an impulse, borne by anger or frustration. Lastly, the defendant's substantial prior period of self-representation, lasting for approximately seven months during which he filed and argued several motions, adds further support to our conclusion that his request to reassume representing himself was sincere, and was not merely an attempt to disrupt the proceedings.[18]
For all of the foregoing reasons, we conclude that the defendant clearly and unequivocally asserted his sixth amendment right to self-representation, and the trial court's denial of the defendant's request without canvassing him pursuant to Practice Book § 44-3 was a violation of that right.[19] A violation of the sixth amendment right to self-representation is structural error that requires automatic reversal of the defendant's conviction and a new trial on the charge of reckless endangerment in the first degree. See Johnstone v. Kelly, supra, 808 F.2d at 218-19; State v. Flanagan, supra, 293 Conn. at 434, 978 A.2d 64.[20]

*812 II
The defendant claims next that the Appellate Court improperly concluded that the trial court did not improperly restrict his cross-examination of Ringor in regard to his potential bias and motivation to lie to the police.[21] Specifically, the defendant contends that the trial court improperly disallowed him from asking Ringor about his driving record prior to the accident, his immigration status at the time of the accident, and whether he had filed or contemplated filing a civil action on the basis of the events underlying the defendant's prosecution. We disagree.
The following additional procedural history is relevant. The state's first witness at trial was Ringor, the individual who was driving the car with which the defendant's motorcycle collided, causing Diaz' death. Ringor testified that he was traveling in the middle lane of the highway when he looked into his rearview mirror and saw and heard motorcycles "zooming" behind and then past him. According to Ringor, he continued traveling in the middle lane, then was struck in the rear of his vehicle by the defendant, who had just passed the car behind him on its left side. Ringor testified further that the impact caused his car to spin out of control and, eventually, come to rest against a Jersey barrier. He estimated that, at the time of the impact, he was traveling between 65 and 70 miles per hour, and the motorcycles were traveling very fast, between 90 and 100 miles per hour.
In general, the defendant's theory of the case was that Ringor, and not the defendant, had caused the collision by moving his car from the center lane into the left lane as the defendant was passing by. Accordingly, the defendant attempted to show that Ringor's version of the events was not accurate.
Following the state's direct examination of Ringor, the jury was excused. Defense counsel stated that he wanted to question Ringor about two speeding tickets he had received in 2002, whether he had been charged in connection with a 2003 accident, and whether his license had ever been suspended. Defense counsel argued that an individual with such a traffic record would have a motive to avoid any new charges and, therefore, to lie to police about what had happened to cause the accident at issue.
The trial court disallowed the defendant from questioning Ringor about his speeding tickets, ruling that they were not relevant and, even if they were, their probative value was exceeded by the danger of unfair prejudice or surprise, confusion of the issues or misleading the jury. The court reasoned additionally that speeding tickets were analogous to prior crimes and, therefore, *813 were excludable under § 4-5(a) of the Connecticut Code of Evidence.[22] As to the 2003 accident, the court noted Ringor's answer, in response to the court's question, that he had not been charged in connection with that incident. In regard to license suspensions, the court explained that they were not admissible to prove fault in driving accidents. The court rejected the defendant's argument as to motive, reasoning that any person would want to avoid a motor vehicle charge, whether new or subsequent, so the motive of an individual having previous charges would not differ substantially from that of a person without a driving record.
Next, defense counsel indicated that he wished to question Ringor about his citizenship status. In response to the trial court's questioning, Ringor stated that he currently was a United States citizen but that, at the time of the accident, he was a legal alien in possession of a green card. Defense counsel argued that Ringor's lack of citizenship had provided a motivation for him to lie to the police about the circumstances of the accident to avoid facing felony charges that could lead to his deportation or prevent him from becoming a citizen. The trial court disagreed, noting that there was no indication that Ringor ever was facing any felony charges and, otherwise, that legitimate green card status, in itself, did not create a motive to fabricate.
Later in the proceedings, defense counsel started to ask Ringor about the existence of "a civil action [or] a lawsuit about this," at which point the state objected and the jury again was excused. In response to a proposed series of questions, Ringor indicated that he was not aware whether there was an action concerning the accident, but that he had been contacted by someone via telephone, "[p]robably a lawyer," at some point in the past. He also had spoken on the telephone to someone from the company that insured the vehicle he had been driving, which belonged to his mother. Ringor testified finally that he had never given a deposition or gone to an attorney's office to be questioned about the accident. Thereafter, defense counsel indicated that his voir dire of Ringor was complete. On the basis of what had been presented, the trial court ruled that none of the information counsel had elicited from Ringor was admissible, but that the topic could be revisited if counsel obtained additional information about a pending civil action.
We turn to the framework within which we must evaluate the defendant's claim that his confrontation right was violated. "The legal standards governing the review of alleged violations of a criminal defendant's sixth amendment right to cross-examine witnesses are well established. The sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him.... The primary interest secured by confrontation is the right to cross-examination.... Indeed, if testimony of a witness is to remain in the case as a basis for conviction, the defendant must be afforded a reasonable opportunity to reveal any infirmities that cast doubt on the reliability *814 of that testimony.... The defendant's right to cross-examine a witness, however, is not absolute.... [T]he [c]onfrontation [c]lause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.... Thus, [t]he confrontation clause does not ... suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination....
"Only relevant evidence may be elicited through cross-examination.... As a general matter, inquiry into prototypical forms of bias is by its very nature relevant to a witness' testimony.... Constitutional concerns are at their apex when the trial court restricts a defendant's ability to cross-examine a key government witness....
"Even when the proffered testimony is relevant, however, the confrontation clause is offended only when a trial court precludes defense counsel from exposing to the jury facts from which the jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness.... In such cases, constitutional prejudice is established where a reasonable jury might have received a significantly different impression of [a witness'] credibility had [defense] counsel been permitted to pursue his proposed line of cross-examination....
"This analysis necessarily involves a case-and-fact-specific balancing test, weighing the relevance of the proposed cross-examination to the defendant's case against the potential to cause unfair prejudice to the victim and the extent to which the inquiry would be repetitive or duplicative of other evidence.... In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial.... Finally, trial judges retain wide latitude insofar as the [c]onfrontation [c]lause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.... For example, we have upheld restrictions on the scope of cross-examination where the defendant's allegations of witness bias lack any apparent factual foundation and thus appear to be mere fishing expeditions." (Citations omitted; internal quotation marks omitted.) State v. Mark R., 300 Conn. 590, 608-11, 17 A.3d 1 (2011).
Applying the foregoing considerations, we conclude that the trial court did not improperly restrict the defendant's cross-examination of Ringor in violation of his constitutional right to confrontation. First, the defendant enjoyed wide latitude in cross-examining Ringor in regard to his version of the accident and whether, contrary to that version, he might have been at fault due to fatigue, distraction or impatience. Specifically, the defendant questioned Ringor about: how long and far he had driven on the night of the accident; whether he had worked and/or attended school during the day prior to the late night drive; whether he had rested prior to departing; the route he had taken and his familiarity with it; whether he had stopped for coffee; whether he was distracted while driving by drinking the coffee, listening to the radio or talking on his cell phone; the manner in which he drove *815 along the way; and whether he was running late and anxious to reach his destination. Moreover, Ringor was asked to recount the precise details of the moments preceding and following the accident, including in particular whether he had moved into the left lane and struck the passing defendant with the left side of his vehicle and in which direction his vehicle consequently had spun.
Next, as to Ringor's driving record and citizenship status, the Appellate Court correctly held that the trial court did not abuse its discretion in ruling that those matters either were of minimal to no relevance or were likely to cause prejudice or confusion. The trial court is charged with "determin[ing] whether the evidence sought on cross-examination is relevant by determining whether that evidence renders the existence of [other facts] either certain or more probable.... [Furthermore, the] trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination." (Internal quotation marks omitted.) State v. Brown, 273 Conn. 330, 339, 869 A.2d 1224 (2005). Additionally, the "proffering party bears the burden of establishing the relevance of the offered testimony." (Internal quotation marks omitted.) Id.; see also State v. Colon, 272 Conn. 106, 198-99, 864 A.2d 666 (2004) ("[o]ur law is clear that a defendant may introduce only relevant evidence, and, if the proffered evidence is not relevant, its exclusion is proper and the defendant's right [to present a defense] is not violated" [internal quotation marks omitted]), cert. denied, 546 U.S. 848, 126 S.Ct. 102, 163 L.Ed.2d 116 (2005).
We agree with the trial court that minor traffic offenses such as speeding are common, and that an individual's prior receipt of speeding citations would provide little incentive to lie in regard to a subsequent offense, beyond that ordinarily existing, particularly when the subsequent offense is substantially more serious. Moreover, because evidence of a driver's speeding on a prior occasion is inadmissible to prove that he was speeding at the time in question; see Conn.Code Evid. § 4-5(a); the court reasonably concluded that admission of Ringor's prior speeding citations would have carried the danger of confusing the jury. See State v. Brown, supra, 273 Conn. at 342, 869 A.2d 1224 (even if relevant, impeachment "evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice or ... confusion of the issues" [emphasis in original; internal quotation marks omitted]). As to the previous suspension of Ringor's license, there is no indication in the record of the reason for it, specifically, whether it related to Ringor's driving, or rather, to some administrative violation.[23] Like the speeding tickets, its link to a motive to fabricate, if any, is unclear.
We further agree with the trial court that Ringor's immigration status was not a proper subject of inquiry because the fact of noncitizenship, standing alone, does not reasonably suggest that a witness will lie. Rather, there must be some demonstrated link between a witness' immigration status and his or her propensity to testify falsely.[24] See, e.g., State v. Ferguson, *816 260 Conn. 339, 352-53, 796 A.2d 1118 (2002) (witness was illegal alien who was able to remain in country with investigating detectives' assistance); Liotta v. State, 939 So.2d 333, 334 (Fla.App.2006) (defense witness lived with and was employed by defendant, who was his immigration sponsor); compare Arroyo v. State, 259 S.W.3d 831, 835-36 (Tex.App. 2008) (defendant properly disallowed from questioning witness about her immigration status when there was no showing she was in vulnerable position vis-à-vis state, thus predisposing her to testify in state's favor, and there was no evidence she received benefits in exchange for testimony), review denied, 2008 Tex.Crim.App. LEXIS 826 (July 2, 2008). In the present case, there was no indication that Ringor was in the country illegally, that he was facing deportation for any reason, that he believed he was vulnerable to deportation or that' he had received the assistance of the police or prosecution when securing his citizenship. Compare, e.g., Baltazar-Monterrosa v. State, 122 Nev. 606, 619, 137 P.3d 1137 (2006) (witness testified as to his understanding that, if he did not testify as authorities desired, he would be deported). Moreover, contrary to the defendant's suggestion, there is nothing in the record showing that authorities ever considered charging Ringor with a felony in connection with the accident, which, according to the defendant, would have hurt Ringor's chances of becoming a citizen.[25] See State v. Abdi, 226 Ariz. 361, 367-68, 248 P.3d 209 (App.2011) (court properly disallowed questioning of victim about his immigration status; defendant's claim that victim falsely accused him of assault because victim's immigration status would be jeopardized if he were initial aggressor was speculative and lacked evidentiary support).
Finally, we disagree with the defendant's claim that the trial court improperly prevented him from asking Ringor whether he had filed or contemplated filing a civil action on the basis of the events underlying the defendant's prosecution, because the defendant never proposed asking that question. "The fact that a witness has instituted a civil action against [a criminal] defendant based upon the same transaction charged in the information or indictment has a direct bearing on the credibility of the witness to show bias and prejudice, as well as the witness' relationship to the case." State v. Burris, 131 Ariz. 563, 567, 643 P.2d 8 (App.1982). Specifically, "the pendency of a civil claim arising out of the same set of circumstances as those that served as the basis for a criminal prosecution is probative of a prosecuting witness' motive to lie because the outcome of the prosecution may be beneficial to the prosecuting witness." (Internal quotation marks omitted.) State v. Erickson, 297 Conn. 164, 191, 997 A.2d 480 (2010); see also State v. Milum, 197 Conn. 602, 611-12, 500 A.2d 555 (1985). In the present case, however, the defendant, during voir dire, never asked Ringor *817 whether he planned to bring an action against the defendant, but, rather, elicited only that Ringor had spoken to his mother's insurer and had been contacted by someone, "[p]robably a lawyer," about the accident. Ringor also testified that he was unaware of the existence of any civil action. Thus, the defendant's proffer suggested only that Ringor's mother as the owner of the vehicle had filed an insurance claim in connection with the accident and that some unknown party perhaps was pursuing an action.[26] In the absence of some showing that Ringor stood to benefit from the defendant's conviction due to Ringor's interest in a civil action, the proffered testimony was irrelevant, and the court properly excluded it.
The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the trial court's judgment and to remand the case to that court for further proceedings consistent with this opinion.
In this opinion NORCOTT, PALMER, ZARELLA and McLACHLAN, Js., concurred.
PALMER, J., concurring.
I join the majority opinion but write separately to express my view that this case presents a close question as to whether the defendant, Victor L. Jordan, expressed his preference for self-representation with sufficient clarity that the trial court was required to honor his request and to canvass him pursuant to Practice Book § 44-3. Although I agree with the dissenting justices that the factual and procedural scenario that the trial court confronted on the issue of self-representation was somewhat confusing, I nevertheless am persuaded that, under governing legal principles, the defendant's sixth amendment rights[1] were violated when the trial court declined to proceed on the defendant's request for self-representation.
The record suggests that the trial court overlooked the defendant's request to represent himself because of the manner in which the request was made. To briefly recapitulate, in a handwritten "motion to dismiss counsel," the defendant indicated that he was dissatisfied with his appointed counsel, William Schipul. According to the defendant's motion, Schipul had a conflict of interest, he had failed to retain a forensics expert, and he had prior commitments that made him unavailable to begin trial in accordance with the defendant's desire for a speedy trial. In light of these concerns, the defendant requested "that the court... either dismiss ... Schipul as [defense] counsel and allow [the] defendant to file pro se [pursuant to Practice Book §] 44-3 or appoint a special public defender as counsel or standby counsel [pursuant to Practice Book §] 44-4...."
*818 At a hearing on the defendant's motion, Schipul stated that his communications with the defendant had broken down and that he should be dismissed from the case for that reason. The defendant orally reasserted his willingness to "handle [his] case pro se" for the reasons set forth in his written motion. Schipul explained his disagreement with the defendant's first two reasons for seeking his dismissal and further indicated that he likely would be available to commence jury selection in a few weeks, a time frame consistent with the defendant's request for a trial within thirty days. With respect to the defendant's motion, the trial court denied it "on the [ground] that [it] has heard no substantive reason therefor based [on] the dialogue [that the court] had with the defendant, with [Schipul], and with the [senior assistant] state's attorney in this matter here today." Thereafter, Schipul stated: "I don't know what the next step is going to be in this case. Is the [defendant] going to represent himself? I've indicated that there is a reason [not contained in the defendant's motion] why I feel that the motion ... should be granted.... So it would be a benefit, I think, to all parties if something were simply laid out for the defense, as well as the state, to advance the proceedings." The trial court did not respond either to Schipul's request to be relieved of his representation of the defendant or to Schipul's reference to the defendant's request to represent himself. The trial court's failure to take any action on those requests was the functional equivalent of denying them.
As a general matter, a criminal defendant has a right to represent himself for any reason, and he may do so even if the attorney representing him at the time has performed diligently and effectively. See, e.g., State v. Flanagan, 293 Conn. 406, 431, 978 A.2d 64 (2009) ("[t]he right of a defendant in a criminal case to act as his own lawyer is unqualified if invoked prior to the start of the trial" [emphasis in original; internal quotation marks omitted]). By contrast, an indigent defendant for whom counsel has been appointed is not entitled to the appointment of new counsel unless he can demonstrate good cause why the attorney originally appointed to represent him should be dismissed. Cf. State v. Drakeford, 202 Conn. 75, 83-84, 519 A.2d 1194 (1987). Thus, in the present case, the defendant was not required to give any reason or reasons why he wished to represent himself; by contrast, a request for the appointment of substitute counsel must be accompanied by a showing of good cause.
This distinction is relevant in the present case because the defendant's written motion sets forth three reasons to support his conclusion that the court should dismiss Schipul and either appoint new counsel or permit him to represent himself with the benefit of standby counsel. The motion, however, contains no indication that those reasons, although important with respect to the issue of the appointment of new counsel, are legally irrelevant with respect to the defendant's decision to represent himself, an election that requires no justification.
Insofar as the reasons set forth in the defendant's motion were intended to support his request for the appointment of new counsel, the trial court expressly rejected those reasons. That is, the court determined that the defendant was not entitled to the appointment of new counsel because he had failed to meet his burden of demonstrating a legitimate basis for such relief. Even though those reasons had no bearing on the defendant's right to represent himselfas I noted previously, he possessed that right regardless of whether those reasons were found to be meritoriousthe fact that the trial court took no action on the defendant's request *819 for self-representation suggests that the court may have rejected that request, like the request for the appointment of new counsel, because it had rejected as meritless the reasons that the defendant identified in his motion. In other words, the court may have construed the defendant's request for self-representation as having been based on groundless concerns that did not support the request, thereby leading the court to conclude that the defendant had not articulated a sufficient basis for his request. Because, however, the defendant needed no such justification, the trial court was required to act on his request for self-representation even though the court had determined that none of the concerns set forth in the defendant's motion was legally supportable.
Presumably, if the defendant had stated that he wished to represent himself solely because Schipul would not be available for trial within thirty days, and if, as in the present case, Schipul stated that he would be available within that time frame, the trial court reasonably could have concluded that the defendant's request to represent himself had been rendered moot because the only concern underlying that request inarguably had been eliminated. The defendant, however, cited two additional reasons why he wanted to represent himself, and, although the court addressed and rejected both of them, it cannot be said that the court's ruling eliminated the defendant's concerns about those two issues. Because there is nothing in the record to indicate that the defendant agreed with the trial court that those two issues lacked merit, the trial court was not entitled to presume that the defendant effectively had withdrawn his request for self-representation.
As the majority has explained, "[t]he possibility of [alternative] rulings does not... preclude a finding of a clear and unequivocal request for self-representation.... [T]o the extent that one may view [a request] as conditional ... a defendant is not deemed to have equivocated in his desire for self-representation merely because he expresses that view in the alternative, simultaneously requests the appointment of new counsel, or uses it as a threat to obtain private counsel." (Internal quotation marks omitted.) Part I of the majority opinion, quoting State v. Flanagan, supra, 293 Conn. at 427, 978 A.2d 64. Although the defendant in the present case sought alternative rulings, that fact alone does not render his request for self-representation equivocal. Consequently, even though the trial court confronted difficulties in considering the defendant's request for self-representation, I agree with the majority that the court was required to address the defendant's request to represent himself by proceeding to canvass him in accordance with Practice Book § 44-3.
Accordingly, I concur.
EVELEIGH, J., with whom VERTEFEUILLE, J., joins, dissenting.
I respectfully dissent. Although I agree with part II of the majority opinion, which concludes that the trial court's evidentiary rulings were proper, I disagree with part I of the opinion, in which the majority concludes that the defendant, Victor L. Jordan, "clearly and unequivocally asserted his right to represent himself, thereby triggering the trial court's responsibility to inquire further and to canvass him pursuant to Practice Book § 44-3...." I further disagree with the majority's position that our analysis in State v. Flanagan, 293 Conn. 406, 427, 978 A.2d 64 (2009), controls the present case, because there are important differences between the manner and context of the requests of the defendant in Flanagan, and the requests *820 of the defendant in the present case. In my view, we must analyze any claim of a violation of the right to self-representation on the basis of all of the surrounding circumstances before making a determination that a defendant's statement was a clear and unequivocal request to exercise that right.
At the outset, I note that I agree with the facts as presented by the majority and recited by the Appellate Court. State v. Jordan, 118 Conn.App. 628, 629-32, 984 A.2d 1160 (2009). There is no need to repeat them herein. I will only reiterate certain facts as they pertain to the discussion. I also agree with the majority that a defendant certainly has a right, under the state and federal constitutions, to represent himself at his criminal trial. State v. Carter, 200 Conn. 607, 513 A.2d 47 (1986).[1] I further agree that, in order for the right to self-representation to be invoked, the defendant must do so in a "clear and unequivocal manner," and there is no independent requirement that the court make an inquiry to clear up any ambiguity. Id., at 611-13, 513 A.2d 47. "The clear and unequivocal request formulation has been said to have developed primarily as a standard designed to minimize abuses by criminal defendants who might be inclined to manipulate the system.... If an unequivocal request were not required, convicted criminals would be given a ready tool with which to upset adverse verdicts after trials at which they had been represented by counsel." (Citation omitted; internal quotation marks omitted.) State v. Gethers, 197 Conn. 369, 377 n. 8, 497 A.2d 408 (1985). In my view, this is precisely what happened in the present case.
The United States Court of Appeals for the Fourth Circuit has previously recognized the dilemma of the trial judge in these circumstances. In United States v. Frazier-El, 204 F.3d 553, 559-60 (4th Cir.), cert. denied, 531 U.S. 994, 121 S.Ct. 487, 148 L.Ed.2d 459 (2000), that court stated: "A defendant who vacillates at trial places the trial court in a difficult position because it must traverse ... a thin line between improperly allowing the defendant to proceed pro se, thereby violating his right to counsel, and improperly having the defendant proceed with counsel, thereby violating his right to self-representation.... In ambiguous situations created by a defendant's vacillation or manipulation, we must ascribe a constitutional primacy to the right to counsel because *821 this right serves both the individual and collective good, as opposed to only the individual interests served by protecting the right to self-representation.... The right of self-representation exists to affirm the dignity and autonomy of the accused and to allow the presentation of what may, at least occasionally, be the accused's best possible defense.... The right does not exist, however, to be used as a tactic for delay ... for disruption ... for distortion of the system ... or for manipulation of the trial process.... A trial court must be permitted to distinguish between a manipulative effort to present particular arguments and a sincere desire to dispense with the benefits of counsel." (Citations omitted; internal quotation marks omitted.)
The United States Court of Appeals for the Ninth Circuit has arrived at the same conclusion. "A defendant must make an explicit choice between exercising the right to counsel and the right to self-representation so that a court may be reasonably certain that the defendant wishes to represent himself." United States v. Arlt, 41 F.3d 516, 519 (9th Cir.1994). "This requirement is necessary to prevent defendants from waiving their right to counsel either inadvertently or impulsively, and also to prevent them from manipulating the mutually exclusive rights to counsel and self-representation." United States v. Hernandez, 203 F.3d 614, 621 (9th Cir. 2000), overruled on other grounds by United States v. Ferguson, 560 F.3d 1060 (9th Cir.2009).
The record before us in the present case reveals that the defendant's purported request was equivocal for three reasons. First, the request was merely an alternative form of relief for his request seeking a speedy trial. Second, the requested relief was for new counsel or self-representation with standby counsel, not to proceed pro se. Third, the trial court learned that the defendant was merely "willing" to self-represent if necessary to receive a speedy trial. The record shows that the trial court determined that it could provide a speedy trial without dismissing the defendant's counsel, and that any other form of relief was rendered unnecessary as a result.
I agree with the Appellate Court that Practice Book § 44-3[2] was implemented to ensure that a defendant's request to represent himself is actually voluntary, willing and intelligent by requiring the court to conduct an inquiry into the defendant's awareness of the consequences of his request before allowing a defendant to represent himself. "The requirement that a court canvass a defendant is not triggered, however, until it has been established that the defendant clearly and unequivocally requested to represent himself.... The first piece of the analysis, therefore, is whether the defendant's request to represent himself was clear and *822 unequivocal." (Citation omitted; internal quotation marks omitted.) State v. Jordan, supra, 118 Conn.App. at 633, 984 A.2d 1160. Even where a clear and unequivocal request is found, however, I do not believe that the canvass requirement is inviolate, where the defendant has previously been canvassed and allowed to represent himself.
On March 15, 2005, the defendant had a public defender appointed to represent him in the present case. Thus, his constitutional right to counsel was preserved at the outset. On November 2, 2005, the defendant and David Abbamonte, his public defender, were in court to address discovery motions. During the discussion on the motions, the defendant began speaking. The trial court, Fasano, J., who was considering the motions at the time, then stated: "I'm not going to be talking to both of you at the same time. If your intention is to go pro se, just indicate that to the court because that is a matter that requires you to be canvassed. And I would ask you a number of questions to make sure it's appropriate under the circumstances, that you're capable of carrying on your own defense, in which case counsel would no longer be the spokesperson, you would be the spokesperson." That court then canvassed the defendant and allowed him to represent himself with Abbamonte as standby counsel. On November 15, 2005, the defendant filed a pro se appearance. Thus, at that time, the defendant was allowed to exercise his constitutional right to represent himself. In fact, on November 23, 2005, the defendant, representing himself, argued more discovery motions. He also appeared in court, again representing himself, and argued motions on December 14, 2005, and May 31, 2006. Unfortunately, during the pendency of the proceedings, Abbamonte passed away. On May 22, 2006, the defendant again enforced his constitutional right to self-representation and filed another pro se appearance. On May 31, 2006, William Schipul was appointed standby counsel. Thereafter, during the course of the proceedings on that date, Schipul was appointed as regular counsel. Therefore, the defendant was again afforded his constitutional right to counsel. On December 13, 2006, the defendant moved for a speedy trial.
Subsequently, on January 23, 2007, the defendant personally filed a motion to dismiss counsel. The defendant's motion to dismiss counsel reads in relevant part: "The defendant respectfully moves this [c]ourt to grant this motion to remove [Schipul] from the above entitled case. (1) The defendant believes a conflict of interest has arisen; [Schipul] represented a co-defendant of the defendant in a prior case, [wherein] the co-defendant was advised by [Schipul who] was biased to the defendant at the time.... (2) Counsel has failed to perform his responsibilities that are unequivocally stated in both the American Bar Association and the Connecticut Bar Association [s]tandard of profession[al] ethics governing the conduct of attorneys. (3) Counsel has failed to retain the assistance of forensic experts required for the above entitled case. (4) Also the defendant has filed a speedy trial motion on December 7, 2006, and expects to be tried in the appropriate time mandated. Counsel has informed [the] defendant that his services are required else[where], therefore making him unavailable to the defendant for his pending trial. I conclude that the court should either dismiss [Schipul] as [the] defendant's counsel and allow [the] defendant to file pro se [Practice Book § 44-3] or appoint a special public defender as counsel or standby counsel [Practice *823 Book § 44-4]."[3]
Schipul asked the court to grant the motion to dismiss counsel at the hearing on January, 24, 2007, although not for the reasons given by the defendant. At the hearing, there was a discussion about the defendant's motion for a speedy trial. The court, Comerford, J., asked the defendant how Schipul was going to represent him in his trial while he was presently on trial in another case. The defendant then informed the court: "Then [Schipul] could step down. And I also made clear to you, Your Honor, that day I would handle my case pro se, which I'm willing to do under the circumstances at this moment and time. I have the file. I'd file probably a couple of more motions, a costs and waive fees which I filed with [Judge Fasano], which he denied without prejudice until I find an expert witness I was trying to obtain for the past year and a half. And I informed my counsel, [Abbamonte and Schipul], to turn over to the state's attorney a witness list, et cetera.... So I'm willing to handle my case, and have this case brought to trial." (Emphasis added.) The court then proceeded to review each reason presented in the motion to dismiss counsel and eventually denied the motion. That court carefully reviewed the entire history of both the case and the defendant's representation in this matter before denying the motion. It issued a ruling after it was determined that the case could start in a few weeks, and also indicated that it had heard no substantive reason to grant the motion. No appeal was taken from the denial of the motion to dismiss counsel. On February 6, 2007, jury selection commenced before the trial court, Blue, J. Thus, the defendant's request for a speedy trial was, in fact, honored within the statutory time period.[4]
I recognize that, "[t]o invoke his [s]ixth [a]mendment right [to self-representation]... a defendant does not need to recite some talismanic formula hoping to open the eyes and ears of the court to his request. Insofar as the desire to proceed pro se is concerned, [a defendant] must do no more than state his request, either orally or in writing, unambiguously to the court so that no reasonable person can say that the request was not made." (Citation omitted; internal quotation marks omitted.) State v. Flanagan, supra, 293 Conn. at 423-24, 978 A.2d 64. As we have observed previously, "[t]he right to counsel and the right to self-representation present mutually exclusive alternatives. A criminal defendant has a constitutionally protected interest in each, but since the two rights cannot be exercised simultaneously, a defendant must choose between them. When the right to have competent counsel ceases as the result of a sufficient waiver, the right of self-representation begins.... Put another way, a defendant properly exercises his right to self-representation by knowingly and intelligently waiving his right to representation by counsel.... When an accused manages *824 his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must knowingly and intelligently [forgo] those relinquished benefits." (Internal quotation marks omitted.) State v. Connor, 292 Conn. 483, 508, 973 A.2d 627 (2009).
I agree with the Appellate Court that "[t]he defendant did not clearly choose the right to represent himself over the right to be represented by counsel. Rather, he requested, in his motion to dismiss counsel, that he either be permitted to represent himself or be appointed new counsel or standby counsel. Though the defendant stated that he was willing to represent himself, his motion filed with the court suggests that he was open to various forms of representation. In essence, the defendant was attempting to exercise the right to counsel and the right to self-representation simultaneously. Precedent instructs us that absent evidence that the defendant has made a clear choice between the two rights, a court cannot determine that the defendant clearly and unequivocally has requested to represent himself.... We, therefore, conclude that the defendant did not clearly and unequivocally request self-representation." (Citation omitted.) State v. Jordan, supra, 118 Conn.App. at 635, 984 A.2d 1160.
I further note that the defendant indicated that he was "willing" to represent himself under these circumstances, but did not express an unequivocal preference to do so. My reading of the phrase "these circumstances" is that the defendant would represent himself if the court determined that self-representation would be necessary to permit the desired speedy trial. The transcript suggests that the trial court concluded that this was certainly not a realistic request because, first, the defendant wanted to file additional motions and continue looking for a forensic expert, and second, Schipul was prepared to represent the defendant in a trial to commence within two weeks. Additionally, after the adverse ruling on the motion to dismiss counsel, the defendant's request was not pursued. I understand that, under certain circumstances, the fact that a defendant did not renew his request to represent himself, where it is reasonable for a defendant to believe that a further request would be futile, obviates any such requirement that the defendant renew his request to represent himself. United States v. Hernandez, supra, 203 F.3d at 622. In the present case, however, I suggest that the request was not renewed because the defendant understood that he would receive a trial in a few weeks and the continued representation by Schipul would not, as he feared, delay his trial. The relief requested in the motion was simply unnecessary given the defendant's satisfied desire for a speedy trial. Further, the relief requested was suggested in an either/or form that demonstrated a preference for representation. The defendant's request for replacement counsel was not couched in terms of willingness, while the alternative relief was so presented. Accordingly, the defendant's willingness to represent himself was, in my view, contingent on the trial court providing a speedy trial only upon the defendant's willingness to represent himself. I conclude that the purported request to exercise his right of self-representation was not clear and unequivocal and, further, that the trial court did not need to consider either form of relief requested given that the defendant's request for a speedy trial was granted without the need for him to dismiss his present counsel. I would, accordingly, affirm the judgment of the Appellate Court.
I further disagree with what is, in my view, an extension by the majority of the *825 rule stated in State v. Flanagan, supra, 293 Conn. at 427, 978 A.2d 64. In Flanagan, we held that the defendant therein had made an unequivocal request to represent himself during the course of a trial and, therefore, the trial court must consider: "(1) the defendant's reasons for the self-representation request; (2) the quality of the defendant's counsel; and (3) the defendant's prior proclivity to substitute counsel. If, after a thorough consideration of these factors, the trial court determines, in its discretion, that the balance weighs in favor of the defendant's interest in self-representation, the court must then proceed to canvass the defendant in accordance with Practice Book § 44-3 to ensure that the defendant's choice to proceed pro se has been made in a knowing and intelligent fashion." Id., at 433, 978 A.2d 64. We emphasized that the trial court, in response to the defendant's inquiry concerning "the right to finish this case [himself] without [his attorney] there," had stated: "if you're making a request of me that you be allowed to represent yourself or that you be allowed to retain or have a new counsel appointed for you, that request is denied." (Internal quotation marks omitted.) Id., at 412-13, 978 A.2d 64.[5] We rejected the state's claim that, because the trial court mentioned the possibility of alternate rulings, the request was equivocal. Id., at 427, 978 A.2d 64. As the United States Court of Appeals for the Second Circuit has noted, "[t]o the extent one may view [a request] as conditional... a defendant is not deemed to have equivocated in his desire for self-representation merely because he expresses that view in the alternative, simultaneously requests the appointment of new counsel, or uses it as a threat to obtain private counsel." Williams v. Bartlett, 44 F.3d 95, 100 (2d Cir.1994); see also United States v. Hernandez, supra, 203 F.3d at 622. Today, this court extends the language in Flanagan, which I consider to be pure dicta, to this case, which clearly does involve a different request made in the alternative. In Flanagan, the defendant never made a request that was granted, as in the present matter, for a speedy trial. The trial court in the present matter determined that the defendant's motion to dismiss present counsel and represent himself or to have counsel appointed was motivated by a desire for a speedy triala desire that was satisfied without resort to dismissing present counsel. In Flanagan, the defendant's midtrial request to dismiss counsel and to represent himself was motivated by disagreement with counsel's trial strategy to forgo presenting a defense. State v. Flanagan, supra, at 412, 978 A.2d 64. The circumstances would be analogous only if the trial court had first *826 determined that it could compel defense counsel to honor the defendant's desire to present a defense. Of course, the court could not make such an order.
In addition, there was no alternative to the current representation presented by the defendant to the trial court in Flanagan other than self-representation. Rather, it was the trial court that introduced the possibility of alternative ruling, not, as in the present matter, the defendant. Therefore, in my view, any scenario suggesting that the court in Flanagan overturned our holding in State v. Connor, supra, 292 Conn. at 508, 973 A.2d 627, that a defendant must make an unequivocal choice to exercise his right of self-representation rather than his right to counsel, and any discussion commenting on the same, is pure dicta.
Further, I should note that both Bartlett and Hernandez, cited in support of our reasoning in Flanagan, involved situations wherein one of the alternative requests had previously been denied, where there was not a single request in the alternative, and where the requests were not couched as relief for a purported problem already addressed by the court to the defendant's satisfaction. In Bartlett, the defendant's request to represent himself during the course of trial was denied; Williams v. Bartlett, supra, 44 F.3d at 98; and in Hernandez, the defendant's pretrial request for new counsel was denied, at which point the defendant requested that he be allowed to represent himself. United States v. Hernandez, supra, 203 F.3d at 617-18. In my view, the pretrial request in the present matterto dismiss counsel to permit a speedy trial and therefore to appoint new counsel or accept the defendant's willingness to represent himselfis inherently ambiguous and plainly distinguishable from the requests in Bartlett, Hernandez and Flanagan. Today's majority opinion places the trial court in the untenable position of having to choose between two competing constitutional rights for the defendant, where either choice could be attacked on appeal, even after the basis for the assertion of the rights has been resolved in the defendant's favor. Although, as the majority states, "the defendant did not seek to delay the proceedings but, rather, to expedite them," in my view, his fluctuation between self-representation and representation by counsel suggests a potential tactical decision to inject the issue, which we currently consider, into the trial. This fact may be especially true when the defendant had previously filed a motion to dismiss prior counsel, which contained wording similar to the motion that the majority now considers.
Finally, in one of the cases we cited for the rule in Flanagan, the Second Circuit further noted: "Of course, when a defendant changes his mind after trial begins, or does so repeatedly at any stage, a court may find that the conduct is manipulative or abusive in some other way. If so, the conduct can be considered vacillation, and a trial judge may find the request equivocal." Williams v. Bartlett, supra, 44 F.3d at 101. It is undisputed that the defendant in the present matter had repeatedly exercised his sixth amendment rightsfirst to counsel, then to self-representation, and later again to counsel. Accordingly, the defendant's conduct in filing the motion to dismiss counsel could have been considered vacillation, and the trial court properly could have found the request equivocal. Therefore, in my view, the request for counsel was not clear and unequivocal. I would affirm the judgment of the Appellate Court.
Accordingly, I respectfully dissent.
NOTES
[1] Practice Book § 44-3 provides: "A defendant shall be permitted to waive the right to counsel and shall be permitted to represent himself or herself at any stage of the proceedings, either prior to or following the appointment of counsel. A waiver will be accepted only after the judicial authority makes a thorough inquiry and is satisfied that the defendant:

"(1) Has been clearly advised of the right to the assistance of counsel, including the right to the assignment of counsel when so entitled;
"(2) Possesses the intelligence and capacity to appreciate the consequences of the decision to represent oneself;
"(3) Comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and
"(4) Has been made aware of the dangers and disadvantages of self-representation."
[2] General Statutes § 53a-63 (a) provides: "A person is guilty of reckless endangerment in the first degree when, with extreme indifference to human life, he recklessly engages in conduct which creates a risk of serious physical injury to another person."

The defendant also was charged with manslaughter in the first degree in violation of General Statutes § 53a-55 and misconduct with a motor vehicle in violation of General Statutes § 53a-57, but with regard to those two counts, the trial resulted in a hung jury and the trial court declared a mistrial. After being assigned for a new trial, the defendant pleaded guilty to misconduct with a motor vehicle and was sentenced to five years imprisonment on that charge.
[3] The record indicates that the defendant's sentence for the unrelated charges began in June, 2004, and concluded in December, 2005.
[4] During the time the defendant represented himself, he filed several motions and appeared before Judge Fasano on three dates to argue them. Some of the defendant's motions were granted, including a motion to expunge to correct an error in the information and a motion for notice of uncharged misconduct.
[5] Shortly before Schipul's appointment, Abbamonte had died. According to the defendant, he consented to Schipul's appointment as full counsel only because he personally was unable to secure an expert witness while he was incarcerated and acting pro se.
[6] A criminal defendant constitutionally is entitled to a speedy trial. U.S. Const., amend. VI; Conn. Const., art. I, § 8.
[7] Practice Book § 44-4 provides: "When a defendant has been permitted to proceed without the assistance of counsel, the judicial authority may appoint standby counsel, especially in cases expected to be long or complicated or in which there are multiple defendants. A public defender or special public defender may be appointed as standby counsel only if the defendant is indigent and qualifies for appointment of counsel under General Statutes § 51-296, except that in extraordinary circumstances the judicial authority, in its discretion, may appoint a special public defender for a defendant who is not indigent."
[8] While the case was pending before Judge Blue, the defendant continued to file motions pro se and, at one point, requested to speak to the trial court directly. The court refused to consider the motions or to hear the defendant, noting that he then was represented by counsel, and directed that the defendant act exclusively through Schipul.
[9] Reckless endangerment in the first degree is a class A misdemeanor. General Statutes § 53a-63 (b). A class A misdemeanor is punishable by a definite sentence not to exceed one year. General Statutes § 53a-36 (1). Prior to his conviction, the defendant had served approximately fifteen months in pretrial detention that was not concurrent with another sentence. We note that, although the defendant already has served more time than the entire sentence underlying the conviction at issue in this appeal, the appeal is not moot. See, e.g., Barlow v. Lopes, 201 Conn. 103, 112, 513 A.2d 132 (1986) ("[i]t is well established that since collateral legal disabilities are imposed as a matter of law because of a criminal conviction, a case will not be declared moot even where the sentence has been fully served").
[10] At the prior hearing on the defendant's motion for a speedy trial, the trial court had responded similarly to the defendant's attempt to argue pro se, ordering him to "[k]eep quiet" and adjourning the hearing.
[11] We disagree with Justice Eveleigh that the defendant had requested self-representation as "an alternative form of relief for his request seeking a speedy trial," that "the defendant was merely `willing' to self-represent if necessary to receive a speedy trial" and that "[t]he record shows that the trial court determined it could provide a speedy trial without dismissing the defendant's counsel, and that any other form of relief was rendered unnecessary as a result." In short, according to Justice Eveleigh, all of the defendant's concerns were assuaged by the trial court's elicitation from Schipul of an estimated start date for the trial, thereby leading the defendant to abandon his request for self-representation.

First, it is clear from the defendant's motion to dismiss counsel, and his prior speedy trial motion, that the defendant wanted both a speedy trial and the dismissal of Schipul, and that the alternatives to which he was amenable were either the appointment of new counsel, self-representation or self-representation with standby counsel. Additionally, even if the defendant was satisfied that his trial would commence soon, a point which the trial court did not confirm by asking him, there still remained three additional reasons underlying the defendant's request to dismiss Schipul and to proceed either pro se or with new counsel. Although Schipul, in response to the court's questioning, explained that he did not believe that he had a conflict of interest or that a forensic expert was warranted, the defendant stated twice that he did not agree with Schipul. It is difficult to conclude, therefore, that the trial court had ameliorated all of the concerns prompting the defendant's assertion of the right to self-representation, thereby leading him to abandon it.
[12] The question of whether the trial court properly declined to provide the defendant with a different attorney is not before us. We note, however that "[t]here is no unlimited opportunity to obtain alternate counsel.... It is within the trial court's discretion to determine whether a factual basis exists for appointing new counsel." (Citation omitted; internal quotation marks omitted.) State v. Drakeford, 202 Conn. 75, 83, 519 A.2d 1194 (1987). After a trial court "has given the defendant an adequate opportunity to inform [the court] of his or her complaints, the court has broad discretion in determining whether circumstances warrant the appointment of new counsel or the dismissal of the defendant's existing counsel.... In evaluating whether the trial court abused its discretion in denying [the] defendant's motion for substitution of counsel, [an appellate court] should consider the following factors: [t]he timeliness of the motion; adequacy of the court's inquiry into the defendant's complaint; and whether the attorney/client conflict was so great that it had resulted in total lack of communication preventing an adequate defense." (Citation omitted; internal quotation marks omitted.) State v. Williams, 102 Conn. App. 168, 205, 926 A.2d 7, cert. denied, 284 Conn. 906, 931 A.2d 267 (2007).
[13] It is only after trial begins that "the right of self-representation is sharply curtailed ... and a trial court faced with such an application must balance the legitimate interests of the defendant in self-representation against the potential disruption of the proceedings already in progress" by considering the reasons for the defendant's self-representation request, the quality of his counsel and his prior proclivity to substitute counsel. (Citation omitted; internal quotation marks omitted.) State v. Flanagan, supra, 293 Conn. at 431-32, 978 A.2d 64.
[14] Justice Eveleigh, like the Appellate Court, concludes in his dissent that the defendant did not clearly and unequivocally assert the right to self-representation because "`he requested, in his motion to dismiss counsel, that he either be permitted to represent himself or be appointed new counsel or standby counsel,'" and, therefore, "`he was open to various forms of representation.' " This argument is not persuasive because, although the defendant did suggest three alternatives to remedy his concerns about Schipul, he in fact received none of them. Rather, the court ordered the one approach to which the defendant clearly was not amenablecontinued representation by Schipul.
[15] We disagree with the Appellate Court's characterization of the defendant as "attempting to exercise the right to counsel and the right to self-representation simultaneously." State v. Jordan, supra, 118 Conn.App. at 635, 984 A.2d 1160. Notably, the defendant did not request the right to act as hybrid counsel in conjunction with an attorney. A request for standby counsel is a normal corollary to a request for self-representation. See United States v. Baker, 84 F.3d 1263, 1267 (10th Cir.1996); see also Practice Book § 44-4.
[16] As we previously have noted herein, the defendant in fact did make some further attempts at self-representation by filing pro se motions. See footnote 8 of this opinion. Because he was represented by counsel, the motions were not addressed. Nevertheless, as we will explain, our conclusion that the defendant's self-representation request was clear and unequivocal is not dependent on these filings.
[17] For this reason, we reject the state's claim, which was not previously identified upon our grant of certification as required by Practice Book § 84-11, that we may affirm the Appellate Court's judgment on the alternate ground of waiver.
[18] In Justice Eveleigh's view, the defendant made an equivocal request for self-representation and now is employing it tactically to upset an adverse verdict rendered after a trial in which he was represented by competent counsel. We disagree. Overall, the verdict in this case was quite favorable to the defendant. The defendant was charged with two felonies and a misdemeanor. He was convicted only of the misdemeanor and already has served the maximum sentence imposable for that charge.
[19] As we previously have explained, "[t]he constitutional right of self-representation depends... upon its invocation by the defendant in a clear and unequivocal manner.... In the absence of a clear and unequivocal assertion of the right to self-representation, a trial court has no independent obligation to inquire into the defendant's interest in representing himself.... [Instead] recognition of the right becomes a matter entrusted to the exercise of discretion by the trial court." (Emphasis added; internal quotation marks omitted.) State v. Flanagan, supra, 293 Conn. at 423, 978 A.2d 64.

In the future, we encourage trial courts, in close cases in which a defendant at least arguably is attempting to assert the right to self-representation, to exercise the foregoing discretion by asking questions aimed at clarifying the defendant's intent. Performing such inquiries would reduce the potential for constitutional violations. It also would encourage questions regarding the right to be resolved at the trial level rather than on appeal, when consideration of a defendant's claim must be undertaken on the existing record alone.
[20] Although the usual remedy for a violation of the right to self-representation is a new trial, the defendant has requested instead that this court order the dismissal of the charge of reckless endangerment in the first degree, the only charge of which he was convicted, because he already has served the maximum sentence available for that charge. We decline the defendant's request, which is more properly directed at the trial court if the state opts to retry him. See General Statutes § 54-56 (authorizing court, "upon motion by the defendant, [to] dismiss any information and order such defendant discharged if, in the opinion of the court, there is not sufficient ... cause to justify the bringing or continuing of such information or the placing of the person accused therein on trial"); see also State v. Corchado, 200 Conn. 453, 460-64, 512 A.2d 183 (1986) (trial court did not abuse discretion in dismissing charge pursuant to § 54-56 after remand by this court; court properly weighed interests of state, defendant and society, including, inter alia, fact that defendant already had served entire available sentence).
[21] Although we reverse the judgment on the basis of the defendant's first claim, we also address his second claim because it is likely to arise in a new trial. See State v. Gonzalez, 302 Conn. 287, 290, 25 A.3d 648 (2011).
[22] Section 4-5 of the Connecticut Code of Evidence provides in relevant part: "(a) ... Evidence of other crimes, wrongs or acts of a person is inadmissible to prove the bad character or criminal tendencies of that person.

"(b) ... Evidence of other crimes, wrongs or acts of a person is admissible for purposes other than those specified in subsection (a), such as to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony...."
[23] For purposes of its evidentiary ruling, the trial court accepted defense counsel's representations as to Ringor's driving history. Counsel did not attempt to submit any related documentation into the record for purposes of appeal.
[24] Typically, pressure to testify in a certain way arises from a noncitizen's illegal immigration status. See People v. Viniegra, 130 Cal.App.3d 577, 580-81, 181 Cal.Rptr. 848 (1982) (proper for prosecution to question defense witness whether he was illegal alien who worked with defendant's husband, who, it was claimed, would turn witness in to immigration authorities if he did not testify favorably for defendant); People v. Turcios, 228 Ill.App.3d 583, 600, 171 Ill.Dec. 87, 593 N.E.2d 907 (1992) ("[a]n illegal alien might be vulnerable to pressure, real or imagined, from the authorities").
[25] The defendant claims, in essence, that because he was charged with multiple felonies in connection with Diaz' death, Ringor similarly was at risk of a felony prosecution. This argument is unpersuasive. Although both men were involved in the same fatal incident, their roles in that incident were entirely dissimilar. A court properly may restrict proposed cross-examination having no factual foundation. State v. Mark R., supra, 300 Conn. at 611, 17 A.3d 1.
[26] If the individual who had contacted Ringor was investigating the accident on behalf of Ringor or his mother, it is not apparent from the defendant's proffer. Furthermore, defense counsel did not state that he believed Ringor had filed a civil action, nor does the record otherwise establish that fact. "The offering party must establish the relevancy of impeachment evidence by laying a proper foundation ... which may be established in one of three ways: (1) by making an offer of proof; (2) the record independently may establish the relevance of the proffered evidence; or (3) stating a good faith belief that there is an adequate factual basis for [the] inquiry." (Internal quotation marks omitted.) State v. Brown, supra, 273 Conn. at 341, 869 A.2d 1224.
[1] The sixth amendment right to self-representation is made applicable to the states through the due process clause of the fourteenth amendment. See, e.g., Faretta v. California, 422 U.S. 806, 818, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
[1] Although the defendant also refers in his brief to the right to self-representation afforded under our state constitution, he has not provided any independent analysis concerning whether the protections under article first, § 8, of our state constitution are greater than those afforded under the federal constitution. In State v. Geisler, 222 Conn. 672, 684-85, 610 A.2d 1225 (1992), we set forth six elements that should be considered in examining state constitutional claims: (1) the text of the state constitutional provision; (2) holdings and dicta of this court and the Appellate Court; (3) federal precedent; (4) sister state decisions; (5) the history of the provision, including the historical constitutional setting and the debates of the framers; and (6) economic and sociological considerations. We have consistently emphasized that "we expect counsel to employ [the Geisler analysis] [i]n order to [allow us to] construe the contours of our state constitution and [to] reach reasoned and principled results...." (Internal quotation marks omitted.) State v. Joyce, 229 Conn. 10, 16 n. 7, 639 A.2d 1007 (1994). When a party fails to analyze these factors separately and distinctly, "[w]e have made clear that ... we are not bound to review the state constitutional claim." Id., at 16, 639 A.2d 1007. Accordingly, I limit my review to the defendant's right to self-representation under the sixth amendment to the federal constitution. See, e.g., State v. Flanagan, supra, 293 Conn. at 409 n. 3, 978 A.2d 64; State v. Colon, 272 Conn. 106, 154 n. 26, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S.Ct. 102, 163 L.Ed.2d 116 (2005).
[2] Practice Book § 44-3 provides: "A defendant shall be permitted to waive the right to counsel and shall be permitted to represent himself or herself at any stage of the proceedings, either prior to or following the appointment of counsel. A waiver will be accepted only after the judicial authority makes a thorough inquiry and is satisfied that the defendant:

"(1) Has been clearly advised of the right to the assistance of counsel, including the right to the assignment of counsel when so entitled;
"(2) Possesses the intelligence and capacity to appreciate the consequences of the decision to represent oneself;
"(3) Comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and
"(4) Has been made aware of the dangers and disadvantages of self-representation."
[3] I note that on June 30, 2005, the defendant had moved to dismiss Abbamonte for similar reasons. He had stated in the previous motion that there was a conflict of interest, that Abbamonte had failed to live up to the professional standards of the American Bar Association and the Connecticut Bar Association, and that he had refused to pursue a bail reduction hearing and to allow the defendant to aid in his own defense. There was no ruling on that particular motion.
[4] In the present matter, the defendant, represented by counsel throughout the trial, was ultimately found guilty of reckless endangerment in the first degree. The jury was deadlocked on the more serious charges of manslaughter in the first degree and misconduct with a motor vehicle, and a mistrial was declared on those charges.
[5] The entire exchange between the trial court and the defendant in Flanagan was as follows:

"[The Defendant]: Excuse me, Your Honor. Don't I have the right to finish this case myself without [the attorney] there?
"The Court: In a word, no. But are you making that request to represent yourself in the remainder of the case?
"[The Defendant]: I mean, if he's not going to do what I feel is in my best interest, I don't think that he should be my attorney. I mean, this is my life. Like I explained to him, when this is over, if I lose, he just goes on to another case. I'm the one who has to go to jail. And he's not doing what I feel is in my best interest. He's doing what he feels is in his best interest, not mine. So, I don't understand how his interest comes before my interest." (Internal quotation marks omitted.) State v. Flanagan, supra, 293 Conn. at 412, 978 A.2d 64.
The court then suggested that if the request is to be self-represented, that request was denied. If the request was for a new attorney, that request was denied. The only question, however, that the defendant asked, was: "Don't I have the right to finish this case myself without [the attorney] there?" (Internal quotation marks omitted.) Id.