******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ISSIAH KILLIEBREW
(AC 37613)

Keller, Prescott and Pellegrino, Js.

*Argued December 1, 2016—officially released April 4, 2017*

(Appeal from Superior Court, judicial district of
Hartford, Suarez, J.)

*Procedural History*

Substitute information charging the defendant with
the crime of arson in the first degree, and information
charging the defendant with violation of probation,
brought to the Superior Court in the judicial district of
Hartford, where the cases were consolidated; there-
after, the first information was tried to the jury before
*Suarez, J.,* verdict of guilty; subsequently, the second
information was tried to the court; judgment of guilty

and judgment revoking the defendant's probation, from which the defendant appealed to this court. *Affirmed.*

*Daniel J. Foster*, assigned counsel, for the appellant (defendant).

*Jennifer F. Miller*, deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Anthony Bochicchio*, senior assistant state's attorney, for the appellee (state).

*Opinion*

KELLER, J. The defendant, Issiah Killiebrew, appeals from the judgment of conviction, rendered after a jury trial, of one count of arson in the first degree in violation of General Statutes § 53a-111 (a) (1).[1] The court further found the defendant guilty of violating his probation.[2] On appeal, the defendant claims that the trial court erred (1) by not canvassing him concerning his right to counsel and right to self-representation after he clearly and unequivocally invoked his right to self-representation and (2) if his invocation of his right to self-representation was not clear and unequivocal, by not canvassing him concerning whether he wanted to invoke his right to self-representation. We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. On April 30, 2013, Tracie Keaton was looking outside her apartment window in Hartford when she saw the defendant, who was a friend of her son, sitting on the porch. Keaton asked the defendant what was wrong, and the defendant replied, "[N]one of your business, mind your business you raw head bitch." Keaton told the defendant that he could not sit on her porch anymore. Before leaving, the defendant retorted that he would "burn this shit down."

Shortly thereafter, the defendant obtained a red plastic container, which contained gasoline, and returned to Keaton's apartment building. The defendant poured the accelerant on the back porch of the apartment building and lit it on fire. Keaton's neighbor, Jessica Watts, saw the defendant pour gasoline on the porch and light it on fire. After seeing the fire start, Watts called Keaton on the phone and told her to evacuate the building. Keaton immediately called the fire department and began knocking on the doors of the other occupants to inform them about the fire. Meanwhile, Watts returned to her residence and told her husband about the fire. He went to the apartment building and put the fire out with buckets of water.

On May 10, 2013, a member of the Hartford Police Department arrested the defendant. The defendant then provided a written statement to the police, in which he described his strained relationship with Keaton and admitted to lighting fire to Keaton's apartment building, with the aid of gasoline, after a dispute with Keaton. The defendant explained that he had been drinking, smoking marijuana, and using PCP all day and, as a result, was "pretty fucked up" and not "thinking straight." He further stated that "[w]henever I smoke [PCP] I lose my mind and have no idea what I am doing." He maintained that he "didn't even know the porch was lit on fire. I wasn't trying to light the house on fire or hurt anyone. I was just pissed off at that woman for

trying to call the cops on me. My intention was just to scare her." The defendant was charged with arson in the first degree and violation of probation. After his initial bail hearing, the defendant privately retained counsel to represent him.

On August 11, 2014, trial commenced. The state presented the testimony of members of the Hartford Police Department and Hartford Fire Department. On August 12, 2014, the final day of evidence, the state's first two witnesses were the defendant's probation officer and Keaton. The third anticipated witness was Watts, but a brief recess was held to address an issue concerning her testimony.[3] After that recess, the defendant stated that he wanted "to say something for the record." The court informed the defendant that he should speak to his attorney before addressing the court and ordered another recess. When the trial resumed, at approximately 11:15 a.m., defense counsel requested more time to speak with the defendant, and the court extended the recess until 2 p.m. After that recess, defense counsel stated that the defendant was refusing to return to the courtroom and moved for a continuance so that he could speak with the defendant further. The court denied the motion and advised the defendant, by way of an intercom in lockup, of his trial rights and that it found that the defendant was waiving those rights by refusing to return to the courtroom. The court informed the defendant that the trial would resume and that he could speak with counsel after the next witness testified.

Prior to the testimony of the next witness, however, the defendant returned to the courtroom and, through counsel, asked to address the court. After advising the defendant of his rights, the court engaged in the following colloquy with the defendant:

"The Court: Now, with respect to what you address this court, you know, this is not an opportunity for you to vent, this is an opportunity for you to tell me what you think your concern is, and then we're going to continue with the trial today. Okay, sir?

"The Defendant: I just feel like I'm not getting represented to my full extent.

"The Court: All right.

"The Defendant: I mean, I don't—*I don't want him as my attorney no more.* That's how I feel.

"The Court: Okay. Well, thank you very much for that, sir. I can understand that you may have feelings with your lawyer or not, however, we're in the middle of the trial. We've gone through the trial. This is our second day of trial. We've gone through three—four days of jury selection. And this court feels that we've— at least I have been trying very hard to make sure that you have a fair trial and I will continue to make sure that you have a fair trial and I will rule on evidence as

they come up. I will decide those one way or the other. I can assure you that I'm trying very hard to give you a fair trial.

"The Defendant: I—excuse me. I definitely do understand that, but it's just I'm not —*I don't feel comfortable*—

"The Court: All right.

"The Defendant: —*with him as being my lawyer.*

"The Court: Okay.

"The Defendant: I just—I'm not—I don't—I'm not— *I don't feel like going through with him as my lawyer.* I don't—I don't—I'm nervous right now and I—I'm not nervous about me going to trial because I already had pick my jurors and I'm already set. *I'm just nervous of they being—I feel like he's not with me, he's not on my side, he's not doing things he needs to do to represent me in my—to my best extent.*

"The Court: Well, I can assure you that [defense counsel] has actually made some filings to the court all in—to protect your rights. And I have received those filings, I have reviewed them, I have considered them and I will decide on those filings. I don't know what else you want him to do. I understand you're, you know, nervous about the situation here but we're in the middle of a trial, sir. So—

"The Defendant: I know but—

"The Court : —we're going to continue that.

"The Defendant: —I—like he brings me to trial without—

"The Court: No. Sir—

"The Defendant: —without—

"The Court: Okay. You know, first, let's not talk about that because the state is not through here. We haven't heard all of the evidence. And then we'll hear all of the evidence, and then we can continue with the trial. Okay, sir?

"The Defendant: I'm—I'm—*I don't want him as my lawyer.*

"The Court: Okay. Well, sir, look—

"The Defendant: I don't want him as—

"The Court: —we're going to continue the trial today. If you want to join us, you're welcome to. You have a right—absolute right to do that. All right? If you're—wish not to be here, that's your choice. I will advise you against that because this is an important stage of the proceeding. Do you want to join us or not?

"The Defendant: I don't understand if I'm not getting represented to my best extent—

"The Court: Well—

"The Defendant: —*why do I have to have him as my lawyer? I don't want him as my lawyer.*

"The Court: All right. Sir—okay. We're going to go— we're in the middle of the trial. At this point, we're going to continue. You have an absolute right to be represented by an attorney, you have an attorney.

"The Defendant: *I don't have him.*

"The Court: You have an attorney. So, sir—

"The Defendant: *He got fired.* You're not understanding me.

"The Court: Sir, look—

"The Defendant: This is my life on the line. I don't— like I wouldn't even get me—that wouldn't have give me time but—

"The Court: Sir, we're now going to continue this—

"The Defendant: I don't have a—

The Court: —case.

"The Defendant: *I don't have a—I don't have a right to say who's my—*

"The Court: Well, wait—

"The Defendant: —*who's my—*

"The Court: —sir. Wait a minute, sir. [Defense counsel] has made a motion to continue this case, I've denied it. All right? So, we're going to continue.

"The Defendant: *He's not my lawyer, though. I fired him.*

"The Court: Sir, I'm going to ask that you sit down and be a part of this process if you wish to be here. If you want to waive your presence, you need to let me know. But, we're going to continue.

"The Defendant: *I fired him so I don't know—I'm going to try and continue that. If I did fire him, he's not my lawyer so—*

"The Court: All right.

"The Defendant: —what's going on with that intercom, I don't got nothing to do with that.

"The Court: Okay. Well, why don't you sit down, sir. Why don't you—we—why don't we hear the evidence as it comes in—through—so are you—you're asking to be excused from the hearing?

"The Defendant: *I don't want him as my lawyer.*"

(Emphasis added.)

The court admonished the defendant that they were in the middle of trial and that they were going to continue with the evidence. The defendant then insisted

on leaving the courtroom and refused to participate in the proceedings. Defense counsel requested, and the court granted, another continuance so that he could speak with the defendant. When the defendant continued to refuse to return to the courtroom, defense counsel moved for "a continuance so [the defendant] can get a new lawyer to finish the trial." The state objected, and the court denied defense counsel's motion. When the jury returned to the courtroom, the court instructed it not to draw an adverse inference from the defendant's absence. Watts proceeded to testify, and, after her testimony, the defendant returned to the courtroom to hear the testimony of the state's final witness. On August 13, 2014, the jury found the defendant guilty of arson in the first degree, and the court found the defendant guilty of violating his probation.

On appeal, the defendant claims that the court erred (1) by not canvassing him concerning his right to counsel and right to self-representation after he clearly and unequivocally invoked his right to self-representation, and (2) if his invocation of his right to self-representation was not clear and unequivocal, by not canvassing him concerning whether he wanted to invoke his right to self-representation. The state responds that the defendant did not invoke his right to self-representation clearly and unequivocally, but, instead, he expressed a desire to substitute counsel. As a result, the trial court was not required to canvass the defendant concerning his right to counsel and his right to self-representation, and did not abuse its discretion by not canvassing the defendant concerning his right to self-representation. We agree with the state.

It is well established that the sixth amendment to the United States constitution "embodies a right to self-representation and that a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so." (Internal quotation marks omitted.) *State* v. *Pires*, 310 Conn. 222, 230, 77 A.3d 87 (2013). "State and federal courts consistently have discussed the right to self-representation in terms of invoking or asserting it . . . and have concluded that there can be no infringement of the right to self-representation in the absence of a defendant's proper assertion of that right." (Internal quotation marks omitted.) Id., 231. That is, "[t]he constitutional right of self-representation depends . . . upon its invocation by the defendant in a clear and unequivocal manner. . . . In the absence of a clear and unequivocal assertion of the right to self-representation, a trial court has no independent obligation to inquire into the defendant's interest in representing himself . . . . [Instead] recognition of the right becomes a matter entrusted to the exercise of discretion by the trial court."[4] (Internal quotation marks omitted.) Id. "In the exercise of that discretion, the trial court must weigh into the balance its obligation to 'indulge in every rea-

sonable presumption against waiver' of the right to counsel." *State* v. *Carter*, 200 Conn. 607, 614, 513 A.2d 47 (1986).

"Although a clear and unequivocal request is required, there is no standard form it must take. [A] defendant does not need to recite some talismanic formula hoping to open the eyes and ears of the court to [that] request. Insofar as the desire to proceed pro se is concerned, [a defendant] must do no more than state his request, either orally or in writing, unambiguously to the court so that no reasonable person can say that the request was not made. . . . Moreover, it is generally incumbent upon the courts to elicit that elevated degree of clarity through a detailed inquiry. That is, the triggering statement in a defendant's attempt to waive his right to counsel need not be punctilious; rather, the dialogue between the court and the defendant must result in a clear and unequivocal statement." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Pires*, supra, 310 Conn. 231–32.

Finally, "where the defendant claims that the trial court improperly failed to exercise that discretion by canvassing him after he clearly and unequivocally invoked his right to represent himself . . . whether the defendant's request was clear and unequivocal presents a mixed question of law and fact, over which . . . our review is plenary." (Internal quotation marks omitted.) *State* v. *Jordan*, 305 Conn. 1, 13–14, 44 A.3d 794 (2012). "[I]n conducting our review, we are cognizant that the context of [a] reference to self-representation is important in determining whether the reference itself was a clear invocation of the right to self-representation. . . . The inquiry is fact intensive and should be based on the totality of the circumstances surrounding the request . . . which may include, inter alia, whether the request was for hybrid representation . . . or merely for the appointment of standby or advisory counsel . . . the trial court's response to a request . . . whether a defendant has consistently vacillated in his request . . . and whether a request is the result of an emotional outburst . . . ." (Internal quotation marks omitted.) *State* v. *Pires*, supra, 310 Conn. 232.

In the present case, the defendant did not invoke his right to self-representation clearly and unequivocally. After the testimony of Keaton, it became apparent that the defendant wanted to delay or stop the trial. Initially, he attempted to forestall the trial by refusing to return to the courtroom. When the court explained that the trial would continue in his absence, the defendant expressed his anxiety about the trial and the quality of the representation he was receiving from defense counsel. The court explained that it believed that the defendant was receiving a fair trial and that defense counsel was working to protect his rights and informed the defendant that the trial would continue. When the

court further observed that the defendant had "an absolute right to be represented by an attorney" and "ha[d] an attorney," the defendant informed the court that he had fired defense counsel and, therefore, did not have an attorney.[5]

The defendant never stated clearly, however, what he wanted after he fired defense counsel, i.e., a continuance, new counsel, or to represent himself. The defendant argues that "the only reasonable inference is that, by attempting to fire his privately retained attorney, he was seeking to represent himself." We disagree. Based on the totality of the circumstances surrounding the defendant's statements, it is reasonable to infer that the defendant wanted a continuance, a new attorney, or both, not to represent himself. Indeed, the court understood the defendant to be seeking to delay the trial, and defense counsel understood him to be asking for a continuance so that he could hire a new attorney to finish the trial. The defendant's refusal to return to the courtroom on two occasions certainly does not indicate that he wanted to represent himself. The defendant did not disavow his counsel's request for a continuance either; he merely disputed whether defense counsel was still his attorney. Accordingly, the defendant did not invoke his right to self-representation clearly and unequivocally.

Alternatively, the defendant argues that even if his invocation of his right to self-representation was "less than clear and unequivocal," the court abused its discretion by not canvassing him concerning his right to self-representation. We disagree. "In the absence of a clear and unequivocal assertion of the right to self-representation, a trial court has no independent obligation to inquire into the defendant's interest in representing himself . . . ." *State* v. *Carter*, supra, 200 Conn. 613. "A trial court, faced with the responsibility of reconciling a defendant's inherently inconsistent rights to self-representation and to counsel, is entitled to await a definitive assertion of a request to proceed pro se. Any other ruling would permit a defendant to claim on appeal a violation of his rights whether he defended himself or was represented by an attorney." Id., 614. In the present case, the defendant did not indicate that he wanted to represent himself. He expressed concerns only about the progress of trial and defense counsel's performance, and the court addressed those concerns. The court was not required, in addition, to address whether the defendant would like to represent himself as an alternative to being represented by defense counsel.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 53a-111 provides in relevant part: "(a) A person is guilty of arson in the first degree when, with intent to destroy or damage a building . . . he starts a fire . . . and (1) the building is inhabited or occupied or the person has reason to believe the building may be inhabited or occupied . . . ."

[2] The arson case and the violation of probation case were consolidated for trial. The substantive charge of arson was tried to the jury, and the charge of violation of probation was tried to the court.

[3] Watts failed to appear, pursuant to a subpoena, on the first day of trial, and a capias was issued. Initially, Watts indicated that she did not want to testify. The court admonished Watts that she was subject to a subpoena and appointed a member of the Public Defender's Office so that she could consult with an attorney concerning the consequences of her refusal to testify. The recess was held so that Watts could consult with counsel. After consulting with counsel, Watts agreed to testify.

[4] "Conversely, once there has been an unequivocal request for self-representation, a court must undertake an inquiry [pursuant to Practice Book § 44–3], on the record, to inform the defendant of the risks of self-representation and to permit him to make a knowing and intelligent waiver of his right to counsel." (Internal quotation marks omitted.) *State* v. *Pires*, supra, 310 Conn. 231.

[5] The record does not reflect that defense counsel knew that he had been fired. Instead, it appears that defense counsel, at that point in time, believed that the defendant did not want to return to the courtroom, not that he wanted to fire him.

A defendant's desire to fire defense counsel mid-trial is of no legal import. A defendant does not have an unbridled discretion to substitute counsel in the middle of trial, and a last minute discharge of counsel requires "exceptional circumstances." (Internal quotation marks omitted.) *State* v. *Drakeford*, 202 Conn. 75, 83–84, 519 A.2d 1194 (1987). Further, a party's motion to substitute counsel and an attorney's motion to withdraw, pursuant to Practice Book § 3-8, "must be supported by a substantial reason," and the decision of whether to grant such a motion is committed to the sound discretion of the trial court. *State* v. *Gamer*, 152 Conn. App. 1, 33–34, 95 A.3d 1223 (2014).