******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.*
# CHRISTOPHER PETTEWAY
## (SC 20853)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander and Dannehy, Js.

### *Syllabus*

Convicted of murder and criminal violation of a standing criminal protective order, the defendant appealed to this court. Although the defendant had elected to represent himself during his trial, the trial court determined amid the trial proceedings that it was necessary to reappoint the defendant's former standby counsel to represent the defendant on the basis of the defendant's conduct, including his conscious decision not to appear in court on a particular occasion. On appeal, the defendant claimed that he was entitled to a new trial because the trial court had violated his constitutional right to self-representation. *Held*:

The trial court did not violate the defendant's right to self-representation, the defendant's conduct, including his conscious decision not to appear in court, having functioned as a forfeiture of that right.

The record indicated that there were multiple instances during which the defendant either had refused court-ordered transportation, failed to appear at scheduled hearings, or threatened to leave trial proceedings, and, although his conduct was not violent, it nonetheless reflected an intolerable pattern of obstructionist and disruptive behavior.

The trial court did not abuse its discretion in finding that the defendant had forfeited his right to self-representation when he refused to return to court to continue voir dire after a lunch break, as that finding was based on the court's subsidiary finding that the defendant had engaged in dilatory, disruptive, and manipulative conduct, the court's decision to reappoint standby counsel was not a premature or impulsive response to the defendant's conduct but was made in an effort to regain control of the courtroom and the trial schedule, and the defendant was aware that his refusal to appear in court without a justification would constitute a forfeiture of his right to represent himself.

Contrary to the defendant's argument that his refusal to return to court to continue voir dire after the lunch break served only as a waiver of his right to be present for voir dire that afternoon, such conduct also could serve as a forfeiture of his right to represent himself for the remainder of the trial proceedings.

Argued December 5, 2024—officially released April 1, 2025

*Procedural History*

Substitute information charging the defendant with the crimes of murder and criminal violation of a standing criminal protective order, brought to the Superior Court in the judicial district of New London, where the court, *S. Murphy, J.*, granted the defendant's motion to remove counsel and to proceed as a self-represented party; verdict of guilty; thereafter, the court, *S. Murphy, J.*, denied the defendant's motion for a new trial and rendered judgment in accordance with the verdict, from which the defendant appealed to this court. *Affirmed.*

*Naomi T. Fetterman*, assigned counsel, for the appellant (defendant).

*Laurie N. Feldman*, assistant state's attorney, with whom were *Stephen M. Carney*, supervisory assistant state's attorney, and, on the brief, *Paul Narducci*, state's attorney, for the appellee (state).

*Opinion*

ALEXANDER, J. The dispositive issue in this appeal is whether the trial court properly found that the defendant, Christopher Petteway, had forfeited his right to self-representation when he refused to return to the courtroom during his murder trial. The defendant appeals[1] from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a and criminal violation of a standing criminal protective order in violation of General Statutes § 53a-223a. He claims that he is entitled to a new trial because the trial court violated his right to self-representation under the federal and state constitutions. Because the defendant's conduct functioned as a forfeiture of his right to self-representation, we disagree and affirm the judgment of the trial court.

---

[1] The defendant appealed directly to this court from the judgment of conviction pursuant to General Statutes § 51-199 (b) (3).

The record reveals the following relevant facts and procedural history. On October 4, 2018, the defendant, believing that his romantic partner was cheating on him, went to his partner's home in New London and stabbed him multiple times, killing him. The state charged the defendant with murder and criminal violation of a standing criminal protective order. Attorneys Kevin C. Barrs and Michael F. Miller from the state Division of Public Defender Services were assigned to represent the defendant.

Following a delay caused by the COVID-19 pandemic, jury selection commenced in June, 2022.[2] The trial court ordered special transportation from the Department of Correction (department) for the defendant so that he could be brought to the court. On the fourth day of voir dire, the defendant refused this special transportation and did not appear in court, which caused the trial court to cancel that day's jury selection. The next day, the trial court admonished the defendant for failing to appear and warned him that he needed to be present in court for the trial. In response, the defendant began to pack up his things, indicating to the court that he wanted to leave. After the trial court advised the defendant that he should participate in court proceedings, the defendant remained in the courtroom.

A few days later, the defendant informed the trial court that he no longer wanted Barrs and Miller to represent him, claiming that the attorneys had a conflict of interest because the defendant had a civil case pending against the city of New London. The trial court assured the defendant that Barrs and Miller were "veteran lawyers" who did not have a conflict of interest in their representation of him. The defendant agreed

---

[2] During pretrial proceedings a few months earlier, the defendant, while represented by counsel, requested to speak to the trial court immediately. He then failed to appear at the scheduled hearing because he refused to leave the correctional facility where he was being detained.

and indicated that he would continue the trial with them. A jury was selected, and evidence was scheduled to begin later that month. On the first day of evidence, Barrs and Miller informed the trial court that a competency evaluation had become necessary.[3] The trial court ordered a competency evaluation and postponed the trial.

The trial court scheduled a competency hearing in August, 2022. The defendant did not attend the hearing, and the department informed the court that he had refused to take the court-ordered transportation. The defendant appeared the following day, and, on the basis of the competency evaluation findings and the stipulations of his attorneys, the trial court found the defendant competent to stand trial.

While the competency evaluation was pending, the defendant moved to remove Barrs and Miller as his counsel. Barrs joined in the defendant's motion to remove himself and Miller, agreeing that there was a conflict of interest in their representation of the defendant. The trial court granted the motion and appointed Attorney Christopher Y. Duby as assigned counsel for the defendant.

On December 15, 2022, the defendant, through Duby, filed a motion indicating his desire to represent himself at trial, which was scheduled to begin with jury selection on January 29, 2023. The trial court held a hearing on the motion on January 11, 2023, at which the defendant stated that his previous "experiences with certain public defenders in different states" informed his decision to represent himself. The trial court canvassed the defendant and granted his motion to remove appointed counsel and to proceed as a self-represented party, finding that he was competent both to waive counsel and

---

[3] The defendant had previously been evaluated and was found competent to stand trial in January, 2019.

to represent himself. During the canvass, the trial court informed the defendant that, if he were to represent himself, he was required to attend court and to be present as ordered by the judge. The defendant agreed. The trial court then appointed Duby to serve as standby counsel.

The defendant also requested a delay in the start of trial. The trial court denied his request for a continuance, indicating that the defendant had many weeks to familiarize himself with the rules of practice and that it could not continue to delay a trial that had already been pending for more than four years. Because the previously selected jury panel had been released, the trial court scheduled jury selection to begin on February 28, 2023.

On the first day of jury selection, the defendant moved to dismiss Duby as standby counsel on the ground of a conflict of interest. The defendant withdrew that motion the following day after Duby assisted the defendant with obtaining materials to aid in the preparation of his defense. The defendant represented himself for the first two days of voir dire.

On the third day of jury selection, the defendant, after attending the morning session of voir dire, refused to return to the courtroom after the lunch break.[4] The defendant, who was not suffering from an illness or other emergency, had changed back into his prison attire and stated that "he would explain [why he left]

___

[4] Earlier that day, the defendant requested days off from trial, claiming that the department was interfering with his case preparation. See *United States* v. *Petteway*, Docket No. 3:23-cr-00008 (SRU), 2023 WL 423127, *1 (D. Conn. January 26, 2023). The defendant reasserted his motion to dismiss standby counsel on the ground that he was having difficulties communicating with Duby while not present in court. The trial court indicated that it would not grant the defendant's request for days off from trial and that any issues regarding the department were beyond the court's control. It also denied the defendant's motion to remove his case to federal court but allowed him to resubmit the motion to dismiss Duby as standby counsel, stating that it would address that motion after the lunch break.

in full and in writing . . . the next time he came [to court] . . . ."

The trial court found that the defendant's refusal to return to the courtroom after the lunch break constituted an "implied waiver" of his right to represent himself.[5] In making this finding, the trial court balanced "the legitimate interests of the defendant in self-representation against the potential disruption of the proceedings that [were] already in progress." The trial court noted that the defendant had previously been able to conform his conduct to the rules of practice and knew how to present a defense on his own behalf. However, it found that the defendant had been warned that his "disruptive, uncooperative behavior and failure to conform his conduct and [to] appear [at court] set him up to [the] risk [of] waiving his right to be present . . . [and] that he had to be present to continue on as a self-represented defendant." As a result of his absence, the trial court found that the defendant had "impliedly waived" his right to self-representation because his conduct was "dilatory for manipulative purposes" and had been obstructive of and disruptive to the trial proceedings.[6] The trial court reappointed Duby to represent the defendant.

---

[5] Although the trial court referred to the defendant's behavior as an "implied waiver" of his right to self-representation, we conclude that the defendant's behavior in the context of the right to self-representation is best described as a forfeiture. See, e.g., *United States* v. *Goldberg*, 67 F.3d 1092, 1100–1101 (3d Cir. 1995) (discussing differences between waiver, forfeiture, and waiver by conduct). Nevertheless, for the sake of consistency with the record, we will use the terms "waiver" or "implied waiver" in characterizing the ruling of the trial court.

[6] In making this finding, the trial court stated that the defendant had demonstrated a pattern of dilatory behavior in refusing to attend court proceedings: "I'm just going to note [that], on many prior occasions, the defendant . . . has refused to come to court and/or [to] cooperate. I have gone through many excuses with [the] defendant, from not getting enough sleep to his being unable to take a ride in a regular van. . . . The court has had to admonish [the defendant] about his delay tactics on previous occasions . . . ."

* * *

The following day, the defendant again refused to go to court in the morning and did not arrive until the early afternoon. Upon his arrival, the trial court informed the defendant of its finding that he had waived his right to self-representation. The trial court additionally found that, even if the defendant's conduct did not rise to the level of an "implied waiver" of his right to self-representation, the defendant had demonstrated that he was not competent "to conduct . . . trial proceedings without the assistance of counsel." In making this competence finding, the trial court pointed to the defendant's lack of an ability to communicate, the way he conducted trial proceedings, and the complex nature of the issues of the case. It found that the defendant exhibited signs of "[d]isorganized thinking, deficits in sustaining attention and concentration, anxiety, and other symptoms that [could] impair his ability to represent himself."[7] The trial court informed the defendant that the proceedings would continue regardless of whether he attended and that it would deem his refusal to attend to be a waiver of his right to be present.

Before the start of evidence, Duby moved for permission to withdraw as counsel, citing the defendant's refusal to communicate with him[8] or to appear in court.

---

"The court was hesitant to allow [the defendant] to represent himself based [on] some of his prior behavior, but the court allowed the defendant to represent himself because the court believes that it is an important constitutional right . . . ."

The trial court also observed that the defendant's conduct had been disruptive to the victim's family, who attended the proceedings, and the jurors, who had been present in court for weeks prior to the defendant's failure to return to court.

[7] The defendant objected to both findings. He first stated that he did not return to court the previous day because he had to get his heart checked and he was experiencing violations of his civil rights while incarcerated. He then claimed that he arrived to court late that day because he believed that he was only meeting with Duby and ultimately decided that he preferred to spend the time in jail preparing for trial.

[8] Duby stated: "[The defendant] has zero relationship with me. He doesn't—he refuses phone calls—opportunities to speak to me by phone, mail that's been sent to the [correctional] facility to his attention has been

The trial court denied the motion, stating that Duby could still adequately represent the defendant, despite the defendant's absences from court.

At the next court proceeding, the defendant appeared remotely and disputed the trial court's finding that he had waived his right to self-representation. He stated that he was "not coming to court unless [he could] represent [himself] or have a different attorney."[9] The trial court ended the proceeding when the defendant continued to interrupt the court. Thereafter, the defendant failed to appear at a scheduled hearing on various motions.[10]

It was not until the fourth day of evidence that the defendant next appeared in person. He used that occasion to claim that the trial court was violating his rights by reappointing Duby as his counsel. Upon the trial court's reiteration of its finding that the defendant was not capable of representing himself, the defendant left the courtroom. The trial proceeded to verdict in his absence with Duby representing his interests.

After rejecting the defendant's affirmative defense of extreme emotional disturbance, the jury returned a verdict of guilty on both charges. Duby subsequently

returned to me as nondeliverable or refused, and jail visits or trying to talk to him when he would come to this courthouse was equally as unavailing. So, I have absolutely no relationship with him."

[9] The trial court additionally offered the defendant special transportation to the court, as well as access to a viewing room that would have allowed him to listen to and to view the proceedings.

[10] At that hearing, the trial court considered the defendant's renewed motion for self-representation, Duby's motion for reconsideration on his motion to withdraw, and a motion that the defendant had filed to replace Duby with other counsel. The court denied all three motions. It reiterated its finding that the defendant had waived his right to self-representation with his conduct and that he was not competent to represent himself. In denying Duby's motion for reconsideration, the trial court also found that the defendant's complaints about Duby were unsubstantiated and found that Duby could "guide the defense pursuant to the strategy he believes to be in the defendant's best interest." (Internal quotation marks omitted.)

moved for a new trial on the defendant's behalf, claiming that the trial court had violated the defendant's right to self-representation.[11] The trial court denied the motion, concluding that the defendant had waived that right through his conduct during trial and reiterated its previous finding that the defendant had "impliedly waived" his right to self-representation following his refusals to attend voir dire, refusals to take transport to court, and his own statements that he would not be attending court.

The trial court rendered a judgment of conviction in accordance with the jury's verdict and imposed a total effective sentence of sixty-five years of incarceration.[12] This direct appeal followed.

On appeal, the defendant claims that the trial court violated his right to self-representation as guaranteed by the sixth amendment to the United States constitution.[13] See, e.g., *Faretta* v. *California*, 422 U.S. 806, 819, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); see also Conn. Const., art I, § 8.[14] The defendant argues that his conduct was not sufficiently disruptive and obstructive to warrant the trial court's finding that he had "impliedly waived" his right to self-representation. He further argues that the trial court incorrectly conflated his right to be present and his right to self-representation, claiming that

---

[11] Duby also moved to withdraw his appearance because the defendant had "refused to consent to provide authorization for the retrieval of certain documents and materials that allegedly could be used for mitigation at sentencing." The trial court denied the motion.

[12] The defendant refused to attend his sentencing.

[13] This right applies to the states through the due process clause of the fourteenth amendment to the federal constitution. See, e.g., *Pointer* v. *Texas*, 380 U.S. 400, 406, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965).

[14] "Because the defendant has not provided an independent state constitutional analysis asserting the existence of greater protection under the state constitution, we analyze his claim under the assumption that his constitutional rights are coextensive under the state and federal constitutions." *State* v. *Lewis*, 333 Conn. 543, 569 n.14, 217 A.3d 576 (2019).

his failure to return to court after the lunch break was a waiver of his right to be present but that he did not waive his right to self-representation. We conclude that the trial court did not violate the defendant's right to self-representation.

Given the trial court's superior position to observe the defendant and to control the proceedings before it, we review a trial court's decision with respect to a defendant's request to represent himself for an abuse of discretion. See, e.g., *State* v. *Braswell*, 318 Conn. 815, 830, 123 A.3d 835 (2015).

"Both the federal constitution and our state constitution afford a criminal defendant the right to [forgo] the assistance of counsel and to choose instead to represent himself or herself at trial." (Internal quotation marks omitted.) *State* v. *Jones*, 281 Conn. 613, 646, 916 A.2d 17, cert. denied, 552 U.S. 868, 128 S. Ct. 164, 169 L. Ed. 2d 112 (2007); see *Faretta* v. *California*, supra, 422 U.S. 819; see also *Godinez* v. *Moran*, 509 U.S. 389, 396, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993) (defendant must be found competent to waive right to assistance of counsel).

Once a defendant invokes his right to self-representation, a trial court must canvass that defendant to determine if the defendant's invocation of that right and the corollary waiver of the right to counsel were both voluntary and intelligent.[15] See, e.g., *State* v. *Braswell*, supra, 318 Conn. 828; see *Faretta* v. *California*, supra, 422 U.S. 835 ("in order competently and intelligently to choose self-representation, [a defendant] should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with

---

[15] It is undisputed that the defendant in the present case clearly and unequivocally invoked his right to represent himself and that the trial court properly canvassed him in connection with his exercise of that right.

eyes open" (internal quotation marks omitted)); *State v. D'Antonio*, 274 Conn. 658, 712, 877 A.2d 696 (2005) (describing purpose of canvass). See generally Practice Book § 44-3 (rule of practice governing canvass for waiver of right to counsel).

A court must indulge in every reasonable presumption against the waiver or forfeiture of fundamental constitutional rights, and must not presume acquiescence in the loss of fundamental rights. See, e.g., *State v. Gore*, 288 Conn. 770, 783–84, 955 A.2d 1 (2008). Forcing a lawyer on an unwilling defendant is contrary to the basic right to defend oneself. *Faretta* v. *California*, supra, 422 U.S. 817. As such, the improper denial of the right to self-representation is a structural error, requiring a new trial. See, e.g., *State v. Braswell*, supra, 318 Conn. 847; *State* v. *Jordan*, 305 Conn. 1, 23, 44 A.3d 794 (2012).

Although the right to self-representation is constitutionally protected, it does not exist in a vacuum and is balanced against the defendant's right to a fair trial conducted in a judicious, orderly fashion. See, e.g., *United States* v. *Dujanovic*, 486 F.2d 182, 186 (9th Cir. 1973) (trial courts must ensure that both accused and government receive fair trial and that defendant's waiver of right to counsel is competently, voluntarily, and intelligently made). A trial court has the discretion to terminate a defendant's exercise of his right to self-representation if the circumstances demonstrate that the defendant is unable to represent himself effectively, particularly because a "trial court is in the best position to assess whether a defendant has the ability and willingness to proceed [self-represented]." *Luke* v. *State*, 214 N.E.3d 1013, 1016 (Ind. App. 2023); see *State* v. *Auburn W.*, 198 Conn. App. 558, 584–85, 233 A.3d 1267 (trial court did not abuse its discretion in finding that defendant's mental illness or mental incapacity would interfere with his competency and concluding that he

had forfeited his right to self-representation because "[the trial judge] had the most advantageous position to observe the defendant"), cert. denied, 335 Conn. 950, 238 A.3d 22 (2020); *Edwards* v. *State*, 902 N.E.2d 821, 827 (Ind. 2009) ("[t]he trial court was also in a position to observe [the defendant's] behavior and demeanor in the first trial, the two pretrial [self-representation] request arguments, and [the defendant's] . . . competency hearing"). Thus, a trial court can deny a defendant's timely request to represent himself[16] (1) when a defendant is not competent to represent himself, (2) when a defendant has not knowingly and intelligently waived his right to the assistance of counsel, (3) when the request is made for dilatory or manipulative purposes, or (4) because the defendant's behavior is disruptive or obstructive. See *State* v. *Braswell*, supra, 318 Conn. 829.

In *State* v. *Johnson*, 185 Conn. 163, 440 A.2d 858 (1981), aff'd, 460 U.S. 73, 103 S. Ct. 969, 74 L. Ed. 2d 823 (1983), this court recognized that a defendant could forfeit his right to self-representation through obstructionist and disruptive behavior during trial proceedings. Id., 179; see also *State* v. *Braswell*, supra, 318 Conn. 835. In *Johnson*, the defendant, dissatisfied with his court-appointed counsel, had to be removed from the courtroom after becoming disruptive. *State* v. *Johnson*, supra, 178–79. The defendant eventually sought to represent himself, and the trial court granted that request, with his court-appointed counsel serving as standby counsel. Id., 179. After being told that no defense witnesses could be called while the prosecution was still presenting its case, the defendant became disruptive

---

[16] See, e.g., *State* v. *Pires*, 310 Conn. 222, 251–52, 77 A.3d 87 (2013) (defendant's right to self-representation is unqualified if invoked prior to start of trial, but, after commencement of trial, right to self-representation is sharply curtailed); see also *State* v. *Flanagan*, 293 Conn. 406, 432–33, 978 A.2d 64 (2009) (setting forth factors that court must consider when defendant untimely invokes right to self-representation).

again and had to be removed from the courtroom. Id. This court concluded that the defendant had not been deprived of his right to self-representation but, rather, that he had forfeited this right through his disruptive behavior. Id.; see also *State* v. *Jones*, supra, 281 Conn. 649 (defendant forfeited his right to self-representation when he "demonstrated proclivity to react violently when court rulings and decisions did not go his way").

By contrast, in *State* v. *Braswell*, supra, 318 Conn. 815, this court concluded that the defendant's behavior was not sufficiently disruptive to warrant forfeiture of his constitutional right to self-representation. Id., 836–37. We initially held that the trial court had violated the defendant's right to self-representation when it denied his request to represent himself on the basis of its findings related to the quality of defense counsel's representation and the state of discovery at that point in the proceedings. Id., 834. We also rejected the state's alternative argument that the defendant had forfeited his right to self-representation by interrupting the court, declining to answer the court's questions, threatening to leave the courtroom, and stating that he would be disruptive if he was not permitted to represent himself. Id., 835. We concluded that, despite indicating that he would disrupt proceedings if not allowed to represent himself, the defendant remained respectful of the court, was not disruptive prior to the court's ruling on his motion to represent himself, and gave every indication that he would have been present and able to represent himself had his request been granted. Id., 835–36; see also *United States* v. *Mosley*, 607 F.3d 555, 559 (8th Cir. 2010) (District Court properly denied motion for self-representation when defendant's behavior interfered with pretrial proceedings and delayed trial); *United States* v. *Long*, 597 F.3d 720, 725–27 (5th Cir.) (defendant waived his right to self-representation when he repeatedly fired public defenders, was uncooperative

during *Faretta* hearing, and refused to answer trial judge's questions), cert. denied, 561 U.S. 1034, 130 S. Ct. 3524, 177 L. Ed. 2d 1105 (2010); *United States* v. *Brock*, 159 F.3d 1077, 1081 (7th Cir. 1998) (District Court did not abuse its discretion in determining that defendant had forfeited his right to self-representation when there was strong indication that he would continue to be disruptive at trial).

In the present case, we conclude that the trial court did not abuse its discretion in finding that the defendant had forfeited his right to self-representation when he refused to return to court to continue voir dire after the lunch break. The trial court's determination was based on its finding that the defendant had engaged in dilatory, disruptive, and manipulative conduct. It was not a premature or quick reaction but, rather, was made in an effort to regain control of the courtroom and the trial schedule. See, e.g., *United States* v. *Butler*, 117 F.4th 1309, 1319 (11th Cir. 2024). The trial court demonstrated admirable patience and explained to the defendant in simple terms, on numerous occasions, the rules that the defendant would need to honor if he wished to proceed in a self-represented capacity. Even after multiple instances of misconduct, the trial court gave the defendant the opportunity to conform to the rules before it made the forfeiture finding.

In a thorough canvass regarding the right to self-representation, the trial court informed the defendant that he was expected to be present during critical stages of trial, specifically jury selection, and that his failure to appear without a justification would constitute an "implied waiver" of his right to self-representation. In finding that the defendant had "impliedly waived" his right to self-representation, the trial court referred to this admonition and the defendant's acknowledgment that he could "follow all of the [court's] rules in terms of the courtroom decorum and what was expected of

the parties in terms of their positioning in the courtroom, when to speak, when not to speak, and everything else that the court [had] required of both sides." Because the defendant was aware of the consequences of refusing to appear in court and had affirmatively stated that he could and would follow the trial court's rules, we conclude that his failure to return to court as required constituted a forfeiture of his right to self-representation.

The defendant claims that his conduct was not sufficiently obstructionist to warrant a finding of forfeiture of his right to self-representation because, on the day he refused to return from the lunch break, he otherwise acted in a pleasant manner and clearly indicated his intent to return to court and to continue with the proceedings the next day. The defendant points to his participation in the two days of jury selection, his selection of two jurors, and his offer of a written explanation regarding his failure to return to court. The defendant contrasts his conduct with that of the defendant in *State v. Jones*, supra, 281 Conn. 613, in arguing that it did not rise to the level of obstruction that occurred in cases in which this court has found forfeiture of the right to self-representation. We are not persuaded.

In *Jones*, this court held that the defendant had forfeited his right to represent himself when he first sought to invoke that right "while forcibly resisting the efforts of the marshals who, acting at the [trial] court's direction, sought to remove him from the courtroom in accordance with his own desire to absent himself from the trial proceedings." Id., 649. The defendant had to be physically restrained by the marshals, and the trial court indicated that it had grown concerned for the safety of those in the courtroom following the defendant's behavior. Id., 630–32. This court concluded that the trial court properly denied the defendant's request to represent himself because the defendant, "by virtue

of his demonstrated proclivity to react violently when court rulings and decisions did not go his way and his obstinate insistence on the propriety of his actions," had forfeited his right to represent himself. Id., 649.

Although the defendant's conduct in the present case did not rise to the level of that of the defendant in *Jones* in terms of violence and obstreperousness, nothing in *Jones* suggests that this court intended in that case to set a minimum standard of misconduct necessary to find that a defendant has forfeited his right to self-representation. The defendant's conduct in the present case was similarly disruptive in that it served no purpose other than to delay court proceedings in a manipulative, dilatory, and obstructionist manner. As noted previously, the defendant's decision not to return to court following a morning session of voir dire was not the first time that he had disrupted and delayed trial proceedings. Rather, the record reflects multiple instances when the defendant either refused court-ordered transportation, failed to appear at scheduled hearings, or threatened to leave trial proceedings. The defendant, in fact, failed to timely appear in court the day after he was found to have forfeited his right to self-representation, even though he was unaware of the court's decision at the time. Although the defendant's conduct was not violent, it nonetheless reflected an intolerable pattern of obstructionist and disruptive behavior.

Finally, the defendant argues that the trial court abused its discretion in finding that his conduct rose to the level of an "implied waiver" of his right to self-representation for *all* of the ensuing proceedings, claiming, instead, that his refusal to return after the lunch break resulted in a waiver of only his right to be present for that afternoon voir dire. The defendant relies on cases from the United States Court of Appeals for the Second Circuit, namely, *Clark* v. *Perez*, 510 F.3d 382 (2d Cir.), cert. denied, 555 U.S. 823, 129 S. Ct. 130, 172

L. Ed. 2d 37 (2008), and *Torres* v. *United States*, 140 F.3d 392 (2d Cir.), cert. denied, 525 U.S. 1042, 119 S. Ct. 595, 142 L. Ed. 2d 537 (1998), in contending that his right to self-representation is distinct from his right to be present.

A review of the Second Circuit's decision in *Clark* is instructive. In that case, after canvassing the defendant, the District Court permitted her to represent herself at trial. *Clark* v. *Perez*, supra, 510 F.3d 385. Instead of engaging in a traditional manner of self-representation, however, the defendant "adopt[ed] a conscious strategy to use [her] trial to further [her] political objectives . . . ." (Internal quotation marks omitted.) Id., 397. She decided to mount a defense that protested the court's legitimacy. Id., 390. As a part of this political protest defense, the defendant, along with her codefendants, absented themselves from the courtroom during nearly all of the proceedings. Id., 387–88. The District Court, however, permitted the defendants to listen to the pro-ceedings over speakers in their holding cells, which they did, and informed them that they could return to the courtroom whenever they wished.[17] Id. At the conclusion of the trial, the defendant was convicted. Id., 388. Nearly twenty years later, the defendant filed a petition for a writ of habeas corpus, claiming, among other things, that the District Court had violated her sixth amendment rights by allowing her to appear as a self-represented party in the manner that she did. Id., 388–89.

---

[17] In *Clark*, the District Court informed the defendants that "they had an absolute right to be present at all stages of their trial, but that they could waive that right by refusing to attend"; *Clark* v. *Perez*, supra, 510 F.3d 387; and that they could listen to proceedings over speakers in their holding cells and could return to the courtroom whenever they wished. Id., 387, 388. During trial, the defendants listened to the proceedings from their holding cells and took part in select portions of the trial, during which they further expressed their political message. See id., 386–88.

The Second Circuit concluded that the District Court's decision to allow the defendant to continue her trial as a self-represented party, while absent from the courtroom, did not violate her sixth amendment right to counsel. Id., 396. In holding that the right to counsel was not violated, the Second Circuit emphasized that the defendant's decision not to participate in or to attend trial was "a conscious strategic choice . . . as part of a de facto political protest defense . . . ." Id. The court explained that the defendant knowingly and intelligently waived her right to counsel, unequivocally asserted her right to self-representation, implemented her trial strategy of choice, and was given the opportunity to return to the courtroom at any time. Id. With this in mind, the court concluded that, even though the defendant was not present in the courtroom during portions of the trial, that did not invalidate her waiver of the right to counsel. Id., 397; see also *Torres* v. *United States*, supra, 140 F.3d 402 (defendant's decision not to participate in trial did not result in nonadversarial proceeding).

The defendant's reliance on *Clark* and *Torres* is misplaced. In *Clark*, the defendant's request to proceed as a self-represented party and her absence from the courtroom, in tandem, had to be respected by the court. Her absence did not constitute a forfeiture of her right to self-representation because it was a well-informed and articulated trial tactic intended as a legal defense. *Clark* v. *Perez*, supra, 510 F.3d 397; see id. ("the [s]ixth [a]mendment right to waive counsel . . . stems in part from the sanctity of freedom of choice . . . [j]ust as district courts should not compel a defendant to accept a lawyer she does not want, they should not interfere with the defendant's chosen method of defense" (citation omitted; internal quotation marks omitted). Unlike in *Clark*, the defendant's absence in the present case was not a strategic, well-informed, and articulated trial

tactic intended as a legal defense; rather, the defendant's failure to attend court was disruptive and intended to delay the legal proceedings. This repeated, impermissible conduct effectively served not only as a waiver of his right to be present but also constituted a forfeiture of his right to represent himself for all the subsequent proceedings in this criminal case.

Although we agree that the right to self-representation and the right to be present for the proceedings are independent constitutional rights,[18] if a defendant refuses to attend court after being informed of the potential consequences that may result from his absence, then that refusal can serve as both a waiver of his right to be present *and* as a forfeiture of his right to represent himself. See *Clark* v. *Perez*, supra, 510 F.3d 395 ("[t]he same disruptive and obstructionist conduct that may justify revocation of [self-represented] status also serves as a constructive waiver of the right to be present at trial, provided that the trial judge warns the defendant that she will be removed if she persists and that the defendant is permitted to return to the courtroom at such time as she agrees to behave"). It is evident that the trial court properly exercised its discretion to reappoint Duby as counsel to ensure that the defendant's right to a fair trial was protected, given the defendant's waiver of his right to be present and his forfeiture of his right to represent himself. Accordingly, we conclude that the

---

[18] The defendant additionally argues that *Crosby* v. *United States*, 506 U.S. 255, 113 S. Ct. 748, 122 L. Ed. 2d 25 (1993), and the codification of its holding in rule 43 of the Federal Rules of Criminal Procedure, stand for the proposition that "a trial may continue in absentia as long as the defendant was present for the commencement of trial, [because] midtrial absence constitutes 'a knowing and voluntary waiver of the right to be present.'" Although the defendant in *Crosby* failed to appear in court following pretrial conferences and hearings, he was represented by counsel for the remainder of trial, with counsel "actively participating" and continuing in the defendant's absence until a verdict was reached. *Crosby* v. *United States*, supra, 257. As such, *Crosby* does not address the right to self-representation and is inapposite to the present case.

trial court did not violate the defendant's right to self-representation.

The judgment is affirmed.

In this opinion the other justices concurred.